# Alford *v*. Creagh.

## *Assumpsit.*

(Decided April 15, 1913.   Rehearing denied May 8, 1913.
62 South. 254.)

1. *Brokers; Employment; Offer; Acceptance.*—While a mere offer to employ a broker to sell land on commission does not create a binding contract unless assented to by the owner within a reasonable time, an acceptance will be implied, though the broker did not inform the owner of his acceptance where it appeared that the offer was in writing, and was preceded by a verbal offer in practically the same terms, which were substantially accepted by the broker by writing to the owner for the land numbers pursuant to the owner's promise at the time of the verbal offer, and the owner furnished such numbers and renewed his offer of employment in even more favorable terms.

2. *Same; Sale of Realty; Statute of Frauds.*—A contract of employment for the sale of realty on commission need not be in writing under the statute of frauds.

3. *Same; Compensation; Individual Liability.*—A husband may make for himself a contract to procure a purchaser for lands belonging to his wife and her sister, so as to incur an individual liability.

4. *Same; Compensation; License.*—The fact that plaintiff had not taken out a state license to engage in the real estate business, as required by the revenue laws, would not invalidate a contract by him to sell lands on commission.

5. *Same; Commissions; Performance of Service.*—A plaintiff must show that he was the cause of procuring a satisfactory buyer within a reasonable time who was able, ready and willing to purchase on the terms fixed by his contract of employment to entitle him to recover commissions for procuring the sale.

6. *Same; Compensation; Sub-Agent.*—Where a broker procures sales through a sub-agent he is entitled to recover commissions although the owner did not know that the purchaser was procured by the sub-agent.

7. *Same; Good Faith.*—A real estate agent employed to sell land must act in good faith in his employer's interests, and must impose upon the purchaser the terms and conditions of sale fixed by the owner, and breaches his duty to the owner if he leads the buyer to believe that the property can be bought for a price less than that fixed.

8. *Same; Duty; Bad Faith.*—It is bad faith in the broker to buy the property at a price less than that fixed with a view to reselling it to a purchaser at a profit to himself.

[Alford v. Creagh.]

9. *Same; Commissions.*—If a real estate broker is guilty of fraud or bad faith towards the owner he loses his right to commissions for selling the property.

10. *Same; Evidence.*—The evidence examined and held to show that plaintiff's sub-agent was guilty of bad faith towards the owner so as to defeat a recovery of commissions by plaintiff for making the sale.

11. *Same; Time.*—The evidence examined and held to show that the sale was not made within a reasonable time to authorize recovery of commissions.

12. *Same; Performance; Extension.*—In order to authorize the recovery of commissions for a sale of land after the time fixed for making the sale, or after a reasonable time where no time is fixed, the broker must show an express or implied extension of time, which would be implied from the subsequent acceptance by the owner of an actual purchaser procured in reliance on the contract.

13. *Contracts; Illegality.*—If the conditions of the statute is for the public benefit, agreements made without complying with such statutory provision for conducting the business are void; but if no penalty is attached to the transaction, and the condition is imposed merely for administrative purposes, such as the convenient collection of revenue, the agreement is valid.

14. *Same; Time of Performance; Reasonable Time.*—Where a contract does not fix the time within which it is to be performed, the law implies that it is to be performed within a reasonable time; to be determined by the nature of the thing to be done, the relation of the parties, the character of the subject matter and circumstances surrounding the parties, when the contract was executed.

15. *Same; Construction; Reasonable Time.*—When the surrounding circumstances are in dispute, it is a question of fact as to what constitutes a reasonable time for the performance of a contract; but when the contract is in writing or the extrinsic facts are undisputed, it is a question of law.

APPEAL from Wilcox Circuit Court.

Heard before Hon. B. M. MILLER.

Assumpsit by P. M. Creagh against Walter R. Alford. From a judgment for plaintiff defendant appeals. Reversed and remanded.

N. D. GODBOLD and BONNER & MILLER, for appellant. The letter without more, was not a contract, and hence, is not binding on defendant.—*Martin v. Black,* 21 Ala. 721; 7 A. & E. Enc. of Law, 126. The contract was not enforceable because violative of the statute of frauds.—Section 4289, Code 1907. The complaint did

not aver that plaintiff procured a purchaser who was both able and ready to comply with the terms.—*Cook v. Forst,* 116 Ala. 395. The contract does not prescribe the time, and the law, therefore, fixes a reasonable time, and the evidence fails to show that the contract was complied with within a reasonable time.—*Comer v. Way, et al.,* 107 Ala. 300; *Griffin v. Ogletree,* 114 Ala. 343; *McFadden v. Henderson,* 128 Ala. 221. When there is no dispute as to the extrinsic facts or the contract is in writing, what is a reasonable time is a question of law for the court, but where the facts are disputed, it becomes a question of fact for the jury.—Authorities supra and *Hutto v. Stough,* 157 Ala. 566. Where an agent who is negotiating a sale represents both parties without their mutual knowledge or consent, he forfeits all rights to compensation or commission from either.—*Green v. Southern States L. Co.,* 141 Ala. 680; *Minto v. Moore,* 1 Ala. App. 556; 31 Cyc. 1448; 23 A. & E. Enc. of Law, 907. He could not act as agent and purchase for himself.—*Waller v. Jones,* 107 Ala. 341; *Kent v. Dean,* 128 Ala. 609; *S. U. & N. I. Co. v. Dangaix,* 103 Ala. 388. The fact that he tried to purchase for himself implies bad faith and fraud on his part.—*Miller v. L. & N.,* 83 Ala. 278; *Henderson v. Vincent,* 84 Ala. 101; 19 Cyc. 257; *Davis v. Clausen,* 57 South. 79. He was without license as a real estate dealer, and hence, his contract was void.—*Woods v. Armstrong,* 54 Ala. 150; *Nelms v. A. L. M. Co.,* 92 Ala. 157; *State v. Metcalf,* 75 Ala. 42; *Arrington v. Morgan,* 75 Ala. 606; *Jemison v. B. & A. R. R. Co.,* 125 Ala. 378.

J. E. ALDRIDGE, JONES & MABRY, and C. N. WHITE, for appellee. A husband may make a contract for the sale of the lands of his wife so as to render him individually liable, and it is here alleged that the sale was ab-

solutely consummated according to its terms, and hence, demurrers were properly overruled to the complaint. If it can be said that the contract was not carried out in a reasonable time, the fact that the purchaser was accepted was a release or an extension of the time, as it was incumbent on defendant either to withdraw his offer or notify the plaintiff that it must be performed within a reasonable time.—*McFadden v. Henderson,* 128 Ala. 221; *Henderson v. Vincent,* 84 Ala. 99; *Griswold v. Pearce,* 86 Ill. App. 407; *Yeager v. Glover,* 89 Minn. 490; *McClare v. Payne,* 49 N. Y. 563; 23 A. & E. Enc. of Law, 903; 7 Kan. 160. The time to be considered was the time between July, 1909, and the spring of 1910, and this cannot be said to be an unreasonable time. Whether or not plaintiff acted in good faith, was a question for the determination of the jury.—99 N. Y. App. Div. 143; 194 Pa. St. 118. The argument that the contract was void because of a want of license is refuted by the decision in the case of *Sunflower L. Co. v. Turner Supply Co.,* 158 Ala. 191.

THOMAS, J.—This was an action by the appellee, Creagh, against appellant, Alford, to recover commissions claimed for services performed in selling certain real estate under a special contract. The plaintiff, Creagh, resides at Suggsville, Clarke county, Ala., where he is engaged in running a boarding house, and the lands, for selling which the commissions are claimed, are located in Clarke county, in the vicinity of Suggsville, and belong to defendant's wife and her sister. The defendant, Alford, resides at or near Camden in Wilcox county, a considerable distance from the lands, so far that when going to the same, in the looking after and management thereof, he was accus-

[Alford v. Creagh.]

tomed to remain overnight at Suggsville, usually stopping there at plaintiff's boarding house, where he was brought in contact with plaintiff. On one such occasion, shortly before July 19, 1909, in a conversation between the two, the plaintiff remarked to defendant that some parties from Chicago and Michigan were coming down South in that section in the coming fall (fall of 1909) to look over some farm lands (the Morris place), which he (plaintiff) had been employed to sell, whereupon defendant told plaintiff to show the parties over his place while they were down there; that he would allow plaintiff a commission of 5 per cent. to sell it for $12,000, and would send plaintiff the description or government numbers of the land on his return home. Shortly after the defendant's return home he says he received a letter from the plaintiff requesting the numbers of the land, in response to which, on July 19, 1909, he (defendant) wrote from Camden to plaintiff at Suggsville as follows (omitting formal parts and immaterial matter), to-wit: "I am inclosing you the numbers of the Forbes place [which was done] as requested some time ago. I have been so very busy that when I would think of the numbers I would not be at home where I could get them. * * * I have been expecting to be at your place before now, but am on the sick list. * * * Hope soon to be all 'O. K.,' and then will come down. Hope you can meet up with good luck and sell the place for me. Will allow you 5 per cent. for sale. Do not care for all cash, a part of it, and balance on time with interest. Will take $12,000.00 for the place. Thanking you for anything you can do towards selling it, I am, "Yours," etc. This letter was promptly received by plaintiff in due course of mail, but its receipt was never acknowledged, nor after its receipt was the defendant ever in any way

notified by plaintiff of the latter's acceptance of the employment.

The general rule unquestionably is, as contended by appellant, that a mere offer to employ another to sell land or do any other act cannot, within itself, create a binding obligation on the party making it, and that before it can have such effect it must be accepted or assented to by the party to whom it was made, and such assent or acceptance must be made known by him to the other party within a reasonable time.—*Martin v. Black,* 21 Ala. 721. Yet where that offer has been preceded, as here, by a verbal offer of practically identical import, and the party to whom it was made has given unmistakable evidence of his acceptance of that verbal offer by writing to the party making it for the land numbers, as promised at the time, and, in response to this letter, the party making the offer writes and furnishes the land numbers and renews his offer of employment in terms none the less favorable to the other party than were contained in the verbal offer, we think an acceptance may be well implied, and that the party receiving the offer is relieved of the necessity of informing the other party of such acceptance.

If the offer contained in the letter from the defendant, which we have quoted, had been more onerous upon or less favorable to plaintiff in any material particular (for instance, in the commissions to be allowed, or otherwise) than was contained in the verbal offer, which had already been accepted, then the letter would probably be construed as the revocation by defendant of the verbal offer (*Chambers v. Seay,* 73 Ala. 372) and the making of a new offer, which would necessitate a new acceptance in order to make its terms a contract between the parties. Not being so, but providing, as it did, for the sale of the same lands on the same commis-

sions at the same price on more favorable terms than
as fixed by the verbal offer, which had been previously
accepted, and written, as the letter was, under the cir-
cumstances which called it forth, the plaintiff had a
right to assume that the defendant would presume his
acceptance of the offer.

We are aware of no provision or construction of the
statute of frauds which necessitates a contract of
the class here being in writing (*Prout v. Robertson*, 87
Ala. 599, 6 South. 190, and cases cited; *Hutto v. Stough*,
157 Ala. 566, 47 South. 1031), and we know of no pol-
icy or principle of law that forbids the husband from
making in his own behalf and incurring an individual
liability upon a contract entered into by him with an-
other to procure a purchaser for lands belonging to his
wife and her sister.—*Rounds v. Alee*, 116 Iowa, 345, 89
N. W. 1098.

Nor does the fact that the plaintiff had not paid the
state for and taken out a license to engage in the real
estate business, as required by the revenue laws of the
state, vitiate the contract.

As has been well said by our Supreme Court on this
subject, quoting approvingly from Clark on Contracts,
"when conditions prescribed by law for the conduct
of a business, trade, or profession are not complied with,
agreements in the course of such business, trade, or
profession are (1) void, if the condition is for the bene-
fit of the public, as for the maintenance of public order
or safety, or the protection of persons dealing with
those upon whom it is imposed; (2) valid, if no specific
penalty is attached to the specific transaction, and the
condition is imposed simply for administrative pur-
poses, such as the protection or convenient collection of
revenue."—*Sunflower Lumber Co. v. Turner Supply.
Co.*, 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20.

[Alford v. Creagh.]

See, also, *Houston v. Boagni,* McGloin (La.) 164; *Prince v. Baptist Church,* 20 Mo. App. 332; *Amato v. Dreyfus* (Tex. Civ. App.) 34 S. W. 450. We have, then, for consideration and construction, a valid contract between the parties.

Failing, as it does, to fix a time within which it is to be performed, the law supplies the deficiency by presuming that the parties intended that it was to be performed within a reasonable time from the making.— *Elliott v. Howison,* 146 Ala. 568, 40 South. 1018.

What is a reasonable time is sometimes a question of fact and sometimes a question of law. Where it depends upon facts extrinsic to the contract, which are matters of dispute, it is a question of fact; when it depends upon the construction of a contract in writing, or upon undisputed extrinsic facts, it is a matter of law.—*Cotton v. Cotton,* 75 Ala. 345; *Comer v. Way,* 107 Ala. 300, 19 South. 966, 54 Am. St. Rep. 93; *Griffin v. Ogletree,* 114 Ala. 343, 21 South. 488; *McFadden v. Henderson,* 128 Ala. 221, 29 South. 640.

Here the terms of the contract are evidenced in writing by the letter, and all the material extrinsic facts leading up to and inducing the letter and shedding light on its meaning are without conflict, as well as all that was subsequently done and said between or by either party in reference to it, or by the plaintiff in his alleged performance of it, and all other material surrounding facts and circumstances, antecedent and subsequent. Hence, the affirmative charge having been requested by and refused to the defendant, it becomes the duty of this court, in determining the correctness of the action of the lower court, to decide whether or not the alleged performance by plaintiff of the contract was accomplished within a reasonable time from its making, and, if so, whether this alleged performance was otherwise

such a performance of the contract as entitles plaintiff to the commissions provided for by it.

To recover these commissions under the contract, it was therefore incumbent on plaintiff to show that within a reasonable time after the contract was executed, he, under it procured, or through another procured, a satisfactory purchaser, who was able, ready, and willing to purchase the property at the price and on the terms fixed by the contract of employment.— Am. & Eng. Ency. Law, vol. 23, p. 918; *Sayre v. Wilson,* 86 Ala. 156, 5 South. 157; *Hutto v. Stough,* 157 Ala. 571, 47 South. 1031.

In determining what is a reasonable time, there must be taken into consideration the nature of the duty to be performed, the relation of the parties, the character of the subject-matter of the contract, and the other peculiar circumstances of the particular case.—*Cotton v. Cotton,* 75 Ala. 345. The term is a relative one, and its meaning differs according to the circumstances of each particular case, and is to be determined in any case only by reviewing the situation confronting and the circumstances surrounding the contracting parties at the time the contract was made, and endeavoring to fix such a time as these reasonably indicate was within the contemplation and intention of the parties.—*Cacker v. Franklin Hemp, etc., Mfg. Co.,* 3 Sumn. 530, Fed. Cas. No. 2,932.

We have hereinbefore recited the uncontradicted facts leading up to the writing of the letter in evidence from defendant to plaintiff, which we have quoted, and which embodies the contract between the parties. It appears that in the fall of 1909, after plaintiff received this letter, the parties from the North, which he had mentioned to defendant before the letter, as expecting, did come down and plaintiff showed them over the land. Neither

of them was willing to buy, but plaintiff never once
informed defendant that they had even been down, nor
made any reference to the matter of the contract be-
tween them, or advised defendant that he was still en-
deavoring to find a purchaser or had endeavored to do
so, although defendant spent the night at plaintiff's
wife's boarding house three or four times after that
fall, and he and plaintiff had conversations together.
After this (but it does not appear when) plaintiff says
he wrote some 20 letters in an effort to sell the property,
but it is not even contended that defendant knew any-
thing about this. It further appears that in the spring
of 1910, about March or April, one S. C. Garrett, from
Grove Hill, Clarke county, Ala., was down at Suggs-
ville, when plaintiff saw him and told him that if he
(Garrett) in his travel would find a purchaser for the
lands at $12,000 he could have half of plaintiffs com-
mission at 5 per cent. Defendant was not informed of
this employment of Garrett or that either plaintiff or
Garrett was trying in any way to sell the land.

Some months later Garrett was in the railroad
station at Cincinnati with a negro prisoner, en route
South, when one H. F. Owings, of Pulaski, Tenn., in a
chance way met him. The two were on the train to-
gether from Cincinnati to Nashville, and Owings, hear-
ing Garrett say he was from Alabama, introduced him-
self, and in the course of a conversation between them
Owings made inquiries as to Alabama lands and the
prices. Garrett then told him about defendant's plan-
tation and other lands in Clarke county being for sale,
but did not advise him of his alleged agency to sell. In
regard to the price, Garrett told Owings that the parties
wanted $12,000 for the place, but he believed it could
be bought for $10,000, and for Owings to come down
and look at it. Later (it does not appear how long af-

ter) Owings wrote Garrett that he was coming down; and shortly thereafter, about September 20, 1910, he and his associate in business, one Hunter, came down to Grove Hill, spent the night with Garrett, and the three went together in Garrett's teams the next day to look over the land. They each of them say that Garrett never at any time informed them that he was an agent to sell this land, nor does he swear positively that he ever so advised either of them. After looking over the land, they spent the night in that vicinity, and Garrett admits again then telling them he thought they could buy the place for $10,000. The next morning he carried Hunter to the railroad station, who returned to Birmingham, and Garrett to Grove Hill, leaving Owings down there, where he remained several days looking over lands in that section. Garrett admits that this was the extent of his connection with the sale of the land, and it does not appear that plaintiff knew then or until after the sale either the parties or that they had been in that vicinity, although they, with Garrett, passed through Suggsville in going to the land and spent the night in the vicinity, only about half a mile from where plaintiff lived and kept a boarding house. Garrett says he heard at the time that plaintiff was not at home. After Garrett's return home, he from Grove Hill, on September 29, 1910, without the knowledge, we infer, of either Owings or Hunter, writes defendant at Camden as follows: "Notify me by phone or return mail the least money that will buy your place near Suggsville. This is with a view of purchasing, and if the price suits me we may get on a trade. Will expect an immediate reply." Garrett admits that he was endeavoring to buy the property for his own benefit. Defendant promptly replied by letter stating that $12,000 was the least he would take.

Owings, after Garrett and Hunter left him, and after remaining several days in the neighborhood of the land, not even knowing the plaintiff or defendant, and not knowing that Garrett had any interest whatever in the sale of the lands, or that defendant had employed an agent to sell them, of his own motion went over to Camden to see defendant about trading for the land, and after two other trips there, from Birmingham to Camden, to see the defendant, the negotiations between them were finally closed and consummated by the defendant, his wife and sister, executing on December 29, 1910, for $12,000, a conveyance of the lands to the Castle Plantation Company, a corporation organized at Birmingham by Owings and his associates, Smith and Hunter, for farming purposes, on December 5, 1910, the date of the filing of the certificate.

Neither Owings nor Hunter, who came down and looked over the lands, ever knew that Garrett was or claimed to be an agent to sell the land, and never became acquainted with plaintiff at all or knew that he was or claimed to be an agent to sell the land, until long after the trade was consummated. Defendant was never informed that plaintiff had employed Garrett to assist him in selling the lands, or knew that Garrett was in any way instrumental in bringing the purchaser to him, or claimed to be, until long after the sale was accomplished. From the time (July 9, 1909) the date of the letter of employment to sell which we have quoted, from defendant to plaintiff, to the time of the completed sale of the land on December 29, 1910, covering a period of nearly 18 months, the plaintiff never once informed defendant that he had done, or was doing, or expected to do anything in an effort to sell said lands, nor even advised defendant that the parties from Chicago and Michigan, the information as to

whose expected coming led to the employment, had been down in the fall of 1909 and looked over the land, but declined to buy, notwithstanding that during this 18 months the defendant a number of times was at plaintiff's house and they conversed together. The first information that defendant had that plaintiff claimed to have been in any way instrumental in bringing about the sale was in February, 1911, some months after the same was completed on December 29, 1910, when plaintiff wrote defendant demanding his commissions of 5 per cent. Plaintiff here predicates his right to recover solely upon the services of his alleged sub-agent, Garrett, whose whole services in connection with the sale we have hereinbefore recited.

While it is true that, where the sale results from the effort of a subagent or employee of the broker, he has the same right to recover commissions as though the sale had been the result of his own personal effort, and that it is not necessary, to entitle the broker to his compensation, that the owner should have known that the person to whom he sold was procured and sent to him by the broker or his subagent, or that either had any connection with the sale (23 Am. & Eng. Ency. Law, p. 913) ; yet we are of opinion that under the facts of this case the plaintiff was not entitled to recover, and that the affirmative charge requested by defendant should have been given for several reasons.

The law requires that a real estate agent, employed to sell land, must act in entire good faith and in the interest of his employer.—*Henderson v. Vincent,* 84 Ala. 101, 4 South. 180. To this end he must exact from the purchaser the price, the terms, and conditions of sale which his employer has fixed.—23 Am. & Eng. Ency. Law (2d Ed.) p. 902. If he fails to do this, but induces the prospective purchaser to believe that the

[Alford v. Creagh.]

property can be bought for less, he fails to discharge that duty to his principal that good faith demands. Such conduct on the broker's part is well calculated to lead the purchaser to stand out and thereby either force from the seller a lower price than that fixed or delay the sale, even if he finally buys at the price fixed, both detrimental to the interest of the seller.

Furthermore, it is equally bad faith in the agent to attempt to buy the property at a less price than that fixed by the seller, with a view of reselling to the prospective purchaser at a profit. He is thereby putting his own interest in direct conflict with that of his employer.—23 Am. & Eng. Ency. Law (2d Ed.) pp. 907, 908.

The real estate agent loses his right to commissions where, in his dealings in reference to the subject-matter of his employment, he is guilty of either fraud or bad faith towards his employer.—23 Am. & Eng. Ency. Law (2d Ed.) p. 921.

Applying these principles to the undisputed evidence as to the conduct of Garrett, we are impressed that it shows such bad faith towards the interest of defendant as to defeat a recovery of commissions by plaintiff, who relies solely for recovery on the services of Garrett in bringing the parties together. Plaintiff cannot be permitted to claim the benefits, and at the same time repudiate the burdens, of Garrett's conduct. He was plaintiff's agent, and his acts, good or bad, in the course of and with reference to the employment were plaintiff's acts.

Furthermore, pretermitting all other questions, the alleged performance was not within a reasonable time from the employment of plaintiff. Considering the conversation between defendant and plaintiff, antedating, and the other circumstances which called forth, the let-

ter of employment in evidence, together with the situation of the respective parties, we are constrained to regard that letter somewhat in the nature of a written acknowledgment and confirmation by defendant of the verbal offer, designed more with the view of preventing misunderstanding and preserving some informal memorial of its terms than for the purpose of making a new offer. Though it fixed no time limit for performance, yet it is to be reasonably supposed from all the attendant facts and circumstances that each party likely understood and contemplated that it would be performed, if at all, the fall following (that is, the fall of 1909), when the prospectors from Chicago and Michigan were to come down. This, under the circumstances of this case, we fix as the reasonable time for performance, and in doing so are governed by what the parties themselves are supposed to have intended, as near as it can be ascertained from the whole surroundings. If before this time defendant had desired to revoke the employment, affirmative action on his part would have been necessary; but after the lapse of such time the contract expired by its own limitations, and no revocation by defendant was necessary in order to put an end to the employment or avoid liability under it.

To fasten a liability upon him for the service the plaintiff or his subagent might perform, after the lapse of such time, in procuring a purchsaer for the land, it would be incumbent on plaintiff to show that the defendant consented, either expressly or impliedly, to an extension of the time. He would be held to have so consented if plaintiff, after failing to get the purchaser originally contemplated, had informed him that, notwithstanding such failure, he would continue to try to find a purchaser, and defendant had made no objection; or defendant would be held to have so consented if he

had accepted the actual purchaser, with knowledge that he was procured by plaintiff or his subagent under and in reliance upon the contract. He could not accept the benefits of a tendered performance and repudiate the burden. However, it is without dispute that not one word passed between plaintiff and defendant about this contract from the time it was made until after the trade for the sale of the land was closed, and that it was closed by defendant in absolute ignorance that either plaintiff or his agent had procured the purchaser, or that plaintiff or his subagent had ever taken a single step in carrying out the employment. It therefore becomes unnecessary to consider the question as to whether or not plaintiff's subagent, Garrett, upon whose acts plaintiff solely relies for recovery, was the efficient cause in bringing together the seller and purchaser. In passing, however, we may say that to be such he must have performed the service, assuming that it was sufficient, under and in consideration of the contract, and not gratuitously as a public-spirited citizen. A person is not permitted to do something for another gratuitously at the time and afterwards charge for it. It is singular, if Garrett had the employment as subagent, which is claimed, and if he was acting at the time under this employment, that he did not communicate the fact to either the seller or the purchaser, pending the negotiations, so as to avoid the possibility of subsequent dispute. It is likewise unnecessary to review the rulings of the lower court on the pleadings, or on the refused charges, since what we have said will be a sufficient guide for another trial, should there possibly be one.

The judgment of the lower court is reversed, and the cause remanded.

Reversed and remanded.