(88 South. 429)

**ERSWELL et al. v. FORD.**    (6 Div. 163.)

(Supreme Court of Alabama. April 14, 1921.)

**1. Brokers ☞46—Realty broker given exclusive right to sell entitled to commission on any sale made by principal.**

As a general rule, a real estate broker who is given an exclusive right to sell property is entitled to a commission on any sale thereof made by the principal, either independently or through the efforts of another broker, within the time specified in the contract of employment.

**2. Brokers ☞49(1)—Presumption is that contract to sell must be performed within reasonable time.**

When no time is fixed for performance of a contract, as a realty broker's contract to effect a sale, embodying an exclusive agency, then the law presumes it must be done within a reasonable time.

**3. Brokers ☞49(1) — Broker must produce purchaser ready to buy on terms satisfactory to owner where letter of authorization fixes no price or terms.**

The law requires complainant realty broker, suing for commission on a sale, under defendant owner's letter of authorization, fixing no price or terms of sale, to produce a purchaser ready and willing to buy on terms satisfactory to the owner and within the time fixed.

**4. Pleading ☞214(1)—Demurrer to bill admits facts alleged.**

On demurrer to the bill the facts alleged are considered undisputed.

**5. Brokers ☞49(1)—Nine years held more than reasonable time for broker to sell.**

Where defendant owner of property wrote plaintiff broker giving him the exclusive right to handle its sale, she, the broker, and the buyer finally procured all residing in the same city, but the broker did not take up the matter of sale with the owner for nine years, more than a reasonable time thereby elapsed, and his exclusive right to handle the sale had expired.

**6. Brokers ☞82(1)—Burden on broker to aver he had exclusive right to handle sale, and that he produced purchaser within reasonable time.**

The burden is on complainant realty broker, to entitle him to commissions on a sale, to aver that he had exclusive right to handle the sale of the property, and having averred a letter giving him such right without specifying any time limit, he must further aver facts showing that within a reasonable time after the authority was given him he produced a purchaser ready and able to buy on terms satisfactory to the owner.

**7. Brokers ☞49(1)—Exclusive right to handle sale without specification of time terminates within reasonable time.**

Exclusive right given a broker without specification of time to handle the sale of a property terminates if no sale is made by the owner within a reasonable time after giving the authority, and also terminates if no purchaser ready and able to buy on terms satisfactory to

---

the owner is produced by the broker within a reasonable time after the letter of authority is given.

**8. Discovery ⬥⟹6 — Complainant must first show cause of action.**

To entitle complainant to a bill for discovery, he must first show his right to relief, a cause of action, a legal right, and, if he does so, must then aver facts to entitle him to a bill for discovery in order to maintain his suit in equity for the production of testimony and documents to establish his cause of action.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by C. W. Ford against Catherine Erswell and others for discovery and the fixing of compensation concerning the sale of real estate. From a decree overruling the demurrers to the bill, respondents appeal. Reversed and remanded.

Leader, Ullman & Ewing, of Birmingham, for appellants.

Failure of Ford to notify Mrs. Erswell that Pizitz had offered $105,000 for the property was a breach of duty, barring right to recover. 177 Ala. 636, 59 South. 286; 19 Cyc. 225; 9 C. J. 567. The contract was unilateral, and subject to be terminated at the pleasure of the owner at any time before complainant made a sale. 73 Ala. 372; 9 Ala. App. 152, 62 South. 560. As a bill for discovery the bill was insufficient for four reasons. 167 Ala. 553, 52 South. 892; 180 Ala. 118, 60 South. 143; 138 Ala. 644, 35 South. 645; 164 Ala. 422, 51 South. 393; 93 Ala. 542, 9 South. 256. The contract was not fully executed.

Arthur L. Brown, of Birmingham, for appellee.

There is no question of complainant's right right to recover. 163 Ala. 433, 50 South. 929; 196 Ala. 419, 72 South. 89; 177 Ala. 636, 59 South. 286. The bill was good as a bill for discovery. 93 Ala. 542, 9 South. 256; 84 Ala. 600, 4 South. 725; 150 Ala. 602, 43 South. 805, 9 L. R. A. (N. S.) 1255. Mutuality of agreement had been supplied, if it was wanting when the contract was made. 191 Ala. 379, 68 South. 63; 203 Ala. 233, 82 South. 483.

MILLER, J. C. W. Ford filed this bill in equity against Catherine Erswell and Louis Pizitz to collect $4,250 alleged to be due him by Catherine Erswell as commissions for the sale of lots Nos. 112, 114, and 116, North Nineteenth street, in Birmingham, Ala., made by Catherine Erswell to Louis Pizitz, and for discovery.

The court below overruled demurrers to the bill of complaint and this is assigned as error.

The complaint avers that Mrs. Catherine Erswell owned the property, and wrote him the following letter:

"Birmingham, Alabama, September 5, 1910.

"Mr. C. W. Ford, % A. A. Adams & Co., Birmingham, Alabama—Dear Sir: I hereby give you the exclusive right to handle the sale and rental of my Birmingham property being situated at 909 South 21st Street, and 112th, 116 No. Nineteenth Street in Birmingham, Alabama.

"Yours very truly, Mrs. E. Erswell."

That under the authority of this letter he (Ford) leased said property on Nineteenth street to Louis Pizitz until December 31, 1922, which is now bringing $1,000 per month. Complainant further avers that "he had many conferences with the respondent Louis Pizitz in reference to buying the property, and induced him to offer the sum of $175,000 for said property, and was about to close the trade for said amount with said Pizitz when Pizitz conceived the idea that he could otherwise, and through other agencies, acquire the property for a less amount, and began negotiations to that end," which finally culminated in a sale of said property by respondent Erswell to respondent Pizitz at and for the sum of $170,000; and that Pizitz became interested in the purchase of the property through his long and persistent efforts, and "that his efforts brought about a sale thereof, although at a price $5,000 less than said Pizitz had offered for it." Complainant further averred:

"That after he had interested the said Pizitz in the purchase of said property, and after he had offered $175,000 for the same, which would have been accepted and closed by the said Pizitz, but the said Pizitz conceived the idea that he could procure the property for a less amount, and set about by himself and agents, through various and sundry methods, to so acquire said property, and by said methods, and with the assistance and acquiescence of the said respondent Erswell, did buy the said property for the sum of $170,000, as he is informed, believes, and so states, the said sale taking place in the early part of September, 1919, and did pay, or cause to be paid, to the said Erswell a part of the purchase price of said property."

The complaint also contains averments to the effect that Mrs. Erswell sold said property to Pizitz, and he has paid at least $10,-000 of the purchase money, and the balance is still unpaid. He avers Pizitz offered him $175,000 for the property, but he does not aver that he ever submitted this offer to Mrs. Erswell. He also avers that respondents entered into a conspiracy to defeat the rights and equities of complainant, to which he became entitled by reason of his services and labor rendered in and about the purchase and sale of said property.

[1] This letter gives complainant "the ex-

clusive right to handle the sale" of the property.

"As a general rule, a real estate broker who is given an exclusive right to sell property is entitled to a commission on any sale thereof made by the principal, either independently, or through .the efforts of another broker, within the time specified in the contract of employment." 9 Corpus Juris. § 101, p. 622.

This letter giving the complainant "the exclusive right to handle the sale" of said property fixes no definite time within which he must sell it or find a purchaser ready and willing to buy. No time is mentioned in it.

[2] When no time is fixed for the performance of the contract, then the law presumes that it must be done within a reasonable time. Skinner v. Bedell's Adm'r, 32 Ala. 44; Henley v. Bush, 33 Ala. 636; Cotton v. Cotton, 75 Ala. 345.

"It has been held that a broker to whom is given the exclusive right to sell cannot recover his commissions when the owner sells the land unless he has produced a purchaser ready and willing to buy on the terms specified in his contract of employment." 9 Corpus Juris, § 101, p. 622, headnote 63.

[3] This letter of defendant to complainant fixes no price; fixes no terms of sale. The bill does not aver that complainant ever asked Mrs. Erswell for the terms of sale. The law requires complainant to produce a purchaser under that letter, ready and willing to buy on terms satisfactory to her, and within the time fixed in his contract. It is necessary for him to notify her of an offer, in order to secure her price and terms, and to see if the offer is satisfactory. Yet for nine years after the letter was written he never inquired of respondent Erswell for her terms of sale; he never mentioned to her that he had a purchaser ready and willing to buy, if the terms were agreeable to her. If he did, the bill does not aver it. This court, in Smith v. Sharpe, 162 Ala. 439, 50 South. 383, 136 Am. St. Rep. 52, said:

"It is true, also, as a general proposition, that if a person enters into a contract with an agent authorizing him to sell land, and the agent fails after a reasonable time to effect a sale * * * the principal may sell his own land, or do so by another agent, unless he has bound himself not to do so."

In Cook & Bro. v. Forst, 116 Ala. 395, 22 South. 540, this court wrote:

"To entitle an agent or broker to commissions, he must show that he procured a purchaser who was able and ready to comply with the terms and conditions of sale."

See Sayre v. Wilson, 86 Ala. 151, 5 South. 157, and authorities cited in Cook & Bro. v. Forst, 116 Ala. 395, 22 South. 540.

This letter of respondent Erswell to complainant did not fix the commissions; it did not fix the price of the property; it did not fix the terms of sale; it did not fix the time within which he could sell; it simply gave him. "exclusive right to handle the sale" of the property. It is over nine years old when this bill is filed. It is over nine years old when he avers the sale was made by Erswell to Pizitz.

The bill by failing to aver it, shows he never inquired of her for her terms of sale, or time of sale, or price of the property. He never mentioned to her that he had a purchaser ready and willing and able to buy, if terms were reasonable, and for those terms. When did this "exclusive right to handle the sale" of the property terminate? Let the law answer:

"In the absence of a contract fixing the duration of a broker's agency, it continues for only a reasonable time." 9 Corpus Juris, pp. 519, 520, headnotes 6, 7.

The rule of law in ·Alabama is that—

"When a contract does not specify a particular time, or appoint the happening of a particular event for performance, the presumption is the parties intended performance within a reasonable time." Cotton v. Cotton, 75 Ala. 345; Alford v. Creagh, 7 Ala. App. 358, 62 South. 254.

[4] "What is a reasonable time is sometimes a question of fact and sometimes a question of law. When it depends upon facts extrinsic to the contract, which are matters of dispute it is a question of fact; when it depends upon the construction of a contract in writing, or when it depends upon undisputed facts, it is a matter of law." Cotton v. Cotton, 75 Ala. 345. Here, it is on a letter, and the allegations of facts in the bill of complaint. Under the demurrer, the facts alleged are considered undisputed; and thus it becomes necessary for the court to decide, under the written letter and the alleged facts, what is a reasonable time for the complainant to produce a purchaser ready, willing, and able to buy the property.

[5] What is a reasonable time when the parties fix no time?

It "depends materially upon the nature of the duty to be performed, the relations of the parties, and the peculiar circumstances of the particular case." Cotton v. Cotton, 75 Ala. 345; Alford v. Creagh, 7 Ala. App. 358, 62 South. 254.

In this case the letters giving the "exclusive right to handle the sale" was written on September 5, 1910. It was written by her in Birmingham, Ala. The bill shows that she and Pizitz reside there. The complainant resides there, and has been in the real estate business in that city since May, 1910. All three residing in the same city, how long would it take him (complainant) to inquire

of her for her price for the property, her terms of sale, the amount of his commissions? One month, one year, or nine years? Nine years passed, and the bill shows, by failing to aver it, that he (complainant) never secured her price or her terms of sale for the property, or informed her of the offer. The bill shows that, under that same letter authorizing him to rent this property, he leased it to Pizitz until December 31, 1922, and under said lease it is now bringing $1,000 rent per month. From the averments of the bill, it was easily rented. The bill avers that Pizitz offered him $175,000 for it. It does not state when this offer was made. It was never communicated to respondent Erswell, yet she and complainant were both in Birmingham, Ala., where the property is located. Under the lease, the rent was being collected monthly—no doubt remitted monthly—but nothing was said or written to her about the $175,000 offer to buy the property.

How much time would it require in the city of Birmingham for a real estate broker, with authority to get a purchaser, to inform his principal that he had an offer of $175,000 for her property, and to see if it met with her approval? Would it take one hour, one day, one month, one year, or nine years? Nine years passed, and the complainant never mentioned it to respondent Erswell. This was valuable property, renting for $833 per month at first; then it gradually increased until it reached $1,000 per month. The bill avers only one prospective purchaser making an offer for this valuable property in nine years, and his offer was $175,000, and it was not communicated to the owner; and the owner sold to the same person for $170,000—losing $5,000. Was the time too short, or too long? Was nine years too short, or too long, a time for him to inquire of Mrs. Erswell for her price, for her terms of sale, and to get a purchaser ready and willing and able to buy? If it was too short, then he would be entitled to commissions under the letter giving him "exclusive right to handle the sale" of the property, if she sold it to Pizitz; if it was too long, then he would not be entitled to commissions, under the averments of the bill, if she sold it to Pizitz. The bill avers she sold to Pizitz in the early part of September, 1919. Nine years is more than a reasonable time, under the written letter giving him "exclusive right to handle the sale" and rental of the property, and, under the averments of the bill, for him to "procure a purchaser who was able and ready to comply with the terms and conditions of sale."

[6] The burden is on the complainant to entitle him to commissions on the sale to aver that he had exclusive right to handle the sale of the property. This he does by the letter, and he must further aver facts showing that, within a reasonable time after

this authority was given him, he produced a purchaser ready and able to buy on terms satisfactory to respondent Erswell. This his bill fails to allege. Failing in this, he should aver facts showing that respondent Erswell sold said property herself to Pizitz, without giving him a reasonable time to sell it, after giving him exclusive right to do so. This he fails to do.

[7] This exclusive right to handle the sale of the property terminates if no sale is made by the owner within a reasonable time after giving the authority; and it also terminates if no purchaser ready and able to buy on terms satisfactory to the owner is produced by the broker (the complainant) within a reasonable time after the letter of authority was given on September, 5, 1910, by respondent Erswell. 9 Corpus Juris, pp. 519, 520, headnotes 6, 7, Id. § 101, p. 622, also, headnote 63 p. 623; Cotton v. Cotton, 75 Ala. 345; Alford v. Creagh, 7 Ala. App. 358, 62 South. 254; Sayre v. Wilson, 86 Ala. 151, 5 South. 157; Cook v. Forst, 116 Ala. 395, 22 South. 540.

The demurrers raising these points, and questioning the equity of the bill for want of sufficient averments to show a cause of action for commissions on the sale, should have been sustained.

The bill avers that respondent Erswell sold said property to respondent Pizitz, and that the papers or contracts of sale have not been placed on record, purposely done, so he cannot find out the exact terms of sale; that respondents pretend to complainant that no sale has been made of the property, but a mere option of purchase made; but that a sale has been made, and the terms thereof are not given to complainant; that they are not placed on record; that he cannot secure the papers or copies of them; that they are in possession of respondents, and they are necessary to determine complainant's rights. The complaint avers "that respondents entered into a conspiracy to defeat the rights and equities of complainant," and they are trying to defraud him out of his reasonable commissions on said sale.

[8] The facts and papers necessary to prove the sale of the property are in the possession and breast of the respondents. A court of equity has the right to make respondents give the facts and produce the papers, or copies of them. To entitle complainant to a bill for discovery, he must first show right to relief, a cause of action, a legal right; and if he avers facts showing a cause of action, a legal right, then he must aver facts to entitle him to a bill for discovery, in order to maintain his suit in equity, for the production of testimony and documents to establish his cause of action. The complainant fails in the former. The demurrers to the bill should have been sustained. Va. & Ala. Min. & Mfg. Co. v. Hale

& Co., 93 Ala. 542, 9 South. 256; Sloss-Sheffield Steel & Iron Co. v. Maryland Casualty Co., 167 Ala. 557, 52 South. 751; Ala. Girls' Ind. School v. Reynolds, 143 Ala. 579, 42 South. 114.

The respondents also demur to certain parts of the bill of complaint. The decrees on the court contain no ruling thereon. The cause was submitted to the court on demurrers to the bill of complaint, and they were overruled by the court.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.