## STARK & OLDHAM BROS. LUMBER CO. v. BURFORD. (2 Div. 891.)

(Supreme Court of Alabama. April 15, 1926. Rehearing Denied June 30, 1926.)

**1. Logs and logging ⬨3(15).**

Proof of number of merchantable trees cut on land, and fair market value, *held* admissible in suit for damages for having cut such trees after expiration of timber deed contract.

**2. Evidence ⬨474(19).**

Market value of timber is in nature of opinion evidence and, under Code 1923, § 7656, any person who has had opportunity for forming correct opinion may testify on subject.

**3. Appeal and error ⬨1058(1).**

If first ruling of court excluding evidence was error, it was cured by subsequently admitting testimony.

**4. Trial ⬨139(1).**

Where evidence tended to prove averments of each count of complaint, general affirmative charge for defendant was properly refused, in view of scintilla of evidence rule.

---

**5. Trial ⚖══260(1).**

Under Code 1923, § 9509, requested charge stating same rule of law, substantially and fairly given to jury in court's general charge, was properly refused.

**6. Trial ⚖══261.**

In view of Code 1923, § 9509, requiring charges to be given or refused in terms in which they are written, charge using word "defendant" instead of "plaintiff," although clerical error, was properly refused.

**7. Logs and logging ⚖══3(1).**

Timber deed contract, construed in its entirety, *held* not wanting in mutuality because of want of mutuality in provision for extension of time to cut and remove timber remaining after expiration of five-year period.

**8. Logs and logging ⚖══3(15).**

Under ·timber deed contract providing extension of time for removing uncut timber on payment of 50 cents per acre, but specifying no time when such amounts should be paid,. presumption is that parties intended performance within reasonable time.

**9. Logs and logging ⚖══3(11).**

What constitutes reasonable time for making tender of amount to extend time for removing timber under timber deed contract depends on facts extrinsic to contract.

**10. Logs and logging ⚖══3(15).**

Charge, in action for damages for removing timber after expiration of contract, that extension provided for in contract must have been made on or before expiration *held* erroneous.

Anderson, C. J., and Sayre and Thomas, JJ., dissenting.

Appeal from Circuit Court, Choctaw County; Ben D. Turner, Judge.

Action by J. B. Burford against the Stark & Oldham Bros. Lumber Company. From·a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Code 1923, § 7326. Reversed and remanded.

Gray & Dansby, of Butler, and John S. Tilley, of Montgomery, for appellant.

Under the terms of the deed it was not necessary, in order to secure the extension mentioned, to tender the 50 cents per acre prior to the expiration of the five-year period. Gotham v. Wachsmuth L. Co., 156 Wis. 442, 146 N. W. 505; Savage v. Wyatt Lbr. Co., 134 La. 627, 64 So. 491; S. A. L. v. Anniston Mfg. Co., 186 Ala. 281, 65 So. 187; 18 ·C. J. 369. There was no sufficient proof of damages to support the verdict, or justify submission of the case to the jury. Hanby v. Dominick, 206 Ala. 539, 90 So. 287; Goodson v. Stewart, 154 Ala. 662, 46 So. 239; Zimmerman Mfg. Co. v. Daffin, 149 Ala. 391, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58.

J. D. Lindsey, of Butler, and Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

By the terms of the statute, the timber reverted to the grantor on October 4, 1925. Code 1923, § 6959. The provision for extension is unilateral in obligation, and is to be strictly construed as to time. The grantee lost its rights after the expiration of the five-year period. Bateman v. Kramer Lbr. Co., 154 N. C. 248, 70 S. E. 474, 34 L. R. A. (N. S.) 615. The evidence shows appellant cut the timber before paying or offering to pay for an extension, and appellee was entitled to the affirmative charge. Southern Bell T.· &. T. Co. v. McTyer, 137 Ala. 601, 34 So. 1020; 7. R. C. L. 1089; Brady v. Green, 159 Ala. 482, 48 So. 807; Fulenwider v. Rowan, 136 Ala. 287, 34 So. 975.

MILLER, ·J. This is a suit by J. B. Burford against Stark & Oldham Bros. Lumber Company, a corporation, for damages for trespass to land of plaintiff. There was judgment for plaintiff based on a verdict of the jury, and the defendant prosecutes this appeal from it.

Two counts of the complaint were submitted by the court to the jury. One is for damages for trespassing upon a certain 40 acres of land of plaintiff, and cutting and removing therefrom certain timber thereon; and the other count claims the statutory penalty for knowingly and willfully entering upon his land without his consent, and cutting and removing certain trees therefrom.

The defendant pleaded general issue, tender, that the timber was cut by defendant as assignee under a contract made by plaintiff with one Williams, and that this timber was cut by defendant with permission of plaintiff under a timber deed contract made by plaintiff with one Williams, which had been transferred to, and belonged to, defendant. The sufficiency of the pleas is not questioned by demurrer. Moss v. King, 186 Ala. 475, 65 So. 180; Coley v. English, 209 Ala. 688, 96 So. 909, headnote 2, and authorities therein cited.

The complaint described 40 acres of land. The evidence was without dispute that plaintiff owned this land. The plaintiff and his wife, *by deed dated October 4, 1919, sold* and conveyed to F. W. Williams "all the merchantable timber eight inches and up standing, lying or being upon certain lands"— several hundred acres—particularly described therein, including the 40 acres in question situated in part in Choctaw county, Ala.. and a part in Wayne county, Miss. This timber was then sold by Williams to the Turkey Creek Mill Company. This mill company sold it to Stark, and Stark sold it to the defendant. These deeds were all executed and delivered by the different parties, and appear

in the bill of exceptions. The original deed executed by the plaintiff granted to the grantee and his assigns "the exclusive right to enter upon said lands for the purpose of cutting and removing said timber at any time within the period of five years from and after the date hereof." It also gave the grantee and assigns right to maintain on said land roadways, bridges, tramroads, sawmills, etc., and also at the expiration of the said five years the right to remove from said lands all equipment and property of every kind that may have been placed thereon by the said F. W. Williams, his heirs or assigns, for the purpose of manufacturing or removing said timber.

The dispute between the parties arose over the cutting and removing of certain timber from this 40 acres by the defendant after the time limit—five years. The defendant, by its servants, entered upon this land after October 5, 1924, and before Christmas of that year, and cut and removed certain timber from it.

The original deed made by plaintiff to Williams, through which defendant claims this timber, contains this provision:

"If said timber shall not be removed from said lands within the time specified above, then and in that event the grantor herein for himself, his heirs and assigns, does hereby covenant and agree to and with the grantee herein for himself, heirs and assigns, to extend the time in which to cut and remove said timber from year to year until the said timber shall be cut and removed, provided the grantee herein his heirs or assigns shall pay the additional sum of 50 cents per acre for each year after the expiration of the said period of five years for each acre from which the timber shall not have been removed until said timber shall have been removed; and the said grantee, his heirs and assigns shall have a reasonable time in which to remove all equipment and property placed on said lands by them after the said timber shall have been cut and removed pursuant to any such extension of time."

The evidence of the defendant tended to show that in July or August, 1924, it and the plaintiff agreed that they were to jointly determine the number of acres uncut, and the defendant would pay the 50 cents per acre for the extension under the contract whenever plaintiff came to the office for it, and defendant stated "that would be perfectly satisfactory." The plaintiff denied that this conversation was ever had, and stated that no such agreement was ever made by him. The evidence tended to show that the plaintiff claimed there were 80 acres of uncut timber land on October 5, 1924. The evidence for the defendant tended to show that, after October 4, 1924, and shortly after this timber in question was cut in the fall of 1924, it tendered at one time to plaintiff $20, at another time an $80 check, and at another time $100 in cash to secure the year's extension, and in accordance with their agreement and the contract, and the plaintiff refused to

accept it. The evidence of the plaintiff was, to the contrary, that no tender was made to him, except the $20; $20 in gold was deposited in court with the tender plea.

There was evidence tending to show the damage to the land was $100, and the trees removed were worth about $160, and the small trees destroyed about $75, in removing the large timber.

There was approved on September 30, 1919, an act of the Legislature, section 4 of which (Gen. Acts 1919, p. 836, which is now the same as section 6959, Code of 1923), reads as follows:

"In all conveyances of standing timber by deed or other instrument, unless otherwise provided in said deed or other instrument, the title to all timber not cut and removed within ten years from the date of the deed or other instrument conveying the same, or at the expiration of the time limit agreed upon by the parties, shall revert to the grantor or grantors."

It was approved prior to the execution, on October 4, 1919, of the deed conveying the timber from plaintiff to Williams. It affects no ruling or charge of the court presented for review.

[1-3] The court did not err in permitting plaintiff to prove how many merchantable trees were cut on this land after October 5, 1924, by the defendant, and the fair market value of that timber at that time. This was material testimony under the issues. Market value is in the nature of opinion evidence, and any person who has had an opportunity for forming a correct opinion may testify on the subject. Section 7656, Code of 1923. It is true the court at first did not allow proof of tender to plaintiff by defendant after October 4, 1924, but afterwards such proof was admitted by the court. The plaintiff denied that tenders were made, except one, and the court permitted the defendant to prove every offer of payment for extension of the time to cut under the agreement in August, 1924, whether the payment offered was in cash or by check. If the court erred in its first ruling, it was afterwards cured by allowing this testimony to be introduced. We find no ruling on the admission or exclusion of evidence by the court at which the defendant can complain.

[4] The general affirmative charge as to each count, with hypothesis in favor of the defendant, was requested in writing, and refused by the court. In this there was no error. The scintilla of evidence rule prevails in this state. There was evidence tending to prove the averments of each count of the complaint submitted to the jury. The evidence was in conflict on the issues presented by the pleas. True, the plea of tender avers the tender of $20 was made before the suit was filed, and the $20 was deposited in court. As to this there was no conflict, but the plea avers the amount due the plaintiff for cutting the trees on the land described was, to

wit, $20. There was much evidence tending to show the amount due the plaintiff for cutting the trees on the land described was much more than $20, and that amount was insufficient to pay the amount due plaintiff. Brown v. Mobile Electric Co., 207 Ala. 61, 91 So. 802, headnote 8; McMillan v. Aiken, 205 Ala. 35, 88 So. 135, headnotes 9–11.

[5] The court did not err in refusing written charge numbered 7, requested by the defendant. It appears the same rule of law stated, or attempted to be stated, in this charge was substantially and fairly given to the jury in the court's general charge. Section 9509, Code of 1923.

[6] Written charge numbered 8, requested by the defendant, was properly refused by the court. It uses the word "defendant" therein where it should have stated plaintiff. This was an error, and, no doubt, a clerical error, but charges must be given or refused by the court in the terms in which they are written. Section 9509, Code of 1923. Then there are other reasons why this charge should have been refused, but we will refer to only one. It ignores the evidence tending to show that there were 160 acres of uncut timber on the land described in the timber deed contract and sale on October 5, 1924, and the defendant deposited in court only $20.

The defendant duly reserved exceptions to the following parts of the oral charge of the court:

(1) "Now, gentlemen, I charge you as a matter of law that if there was no law that if there was no extension of this contract made between the Stark-Oldham Bros. Company, a corporation, and the plaintiff Burford, in this case on or before the expiration of this contract, then these defendants would have no right to enter upon the lands of this plaintiff and cut any of the timber conveyed by this deed, and the subsequent tender of the amount provided in this deed of 50 cents per acre would not have the effect of putting into operation the extension clause of this contract. In my judgment, the law in regard to this particular contract would be this, that it would be necessary for the defendants, or those who claim the right of extension, to procure that extension prior to the expiration of the contract."

(2) "I intended to say to you, gentlemen, that, if this contract was not extended prior to the expiration, or at the time of the expiration, then no subsequent tender of the amount which might have been due on the contract would have the effect of putting into effect the extension clause of the contract."

This involves a construction of that part of the original contract in the deed from plaintiff to Williams which is referred to in the oral charge, and which is heretofore copied in this opinion. That part of the contract applicable may be stated as follows:

"If said timber shall not be removed from said lands within the time specified above, then and in that event the grantor [plaintiff] * * * does hereby covenant and agree to and with the grantee [defendant] * * * to extend the time in which to cut and remove said timber from year to year until said timber shall be cut and removed, provided the grantee [defendant] * * * shall pay the additional sum of 50 cents per acre for each year after the expiration of the said period of five years for each acre from which the timber shall not have been removed, until said timber shall have been removed."

By the contract the parties covenanted and agreed to extend the time in which to cut and remove the timber, if the timber was not removed from the lands within the time specified. The time specified was five years from and after October 4, 1919.

The evidence without dispute clearly shows that a part of the timber conveyed by the deed remained on this land uncut and unremoved on October 5, 1924. Whether there would be any on the land at that time could not be ascertained with certainty until after the five-year period allowed for removing it. But, if there was any there uncut and unremoved on the land on October 5, 1924, then the parties had in writing in the original contract agreed to extend the time for cutting and removing it "from year to year, until said timber shall have been removed; provided the grantee shall pay the additional sum of 50 cents per acre for each year after the expiration of the said period of five years for each acre from which the timber shall not have been removed." The parties agreed on an extension to cut and remove the timber. They agreed on the price per acre, 50 cents. They agreed it must be the acres in timber described in the deed, from which the timber had not been cut and removed. But from necessity they could not agree on the number of acres on October 4, 1919, that would be uncut on October 5, 1924, so that was left open to be ascertained after October 5, 1924. The contract also states:

"Provided the grantee [defendant] shall pay the additional sum of 50 cents per acre for each year after the expiration of the said period of five years for each acre from which the timber shall not have been removed. * * *"

No time was fixed by the contract when this 50 cents per acre should be paid. The amount to be paid depended on the number of acres remaining on which the timber had not been cut on October 5, 1924. It would take some time for the parties from necessity, after October 5, 1924, to ascertain the number of acres for which 50 cents per acre should be paid. The defendant, by one of its officials, manifested its desire to have the time extended for cutting and removing this timber, as the evidence without dispute shows, by his conversation with plaintiff in July or August, 1924, and the defendant cut and removed some of this timber from this land

immediately after October 4, 1924, and tendered plaintiff $20.

[7] This contract must be taken and construed in its entirety, and, when so construed, it is not wanting in mutuality, because there is a want of mutuality in a part thereof as to the extension of the time to cut and remove the uncut timber remaining on the land after the five year period. Phelan v. Tomlin, 164 Ala. 383, 51 So. 382, headnotes 2–3; Comer v. Bankhead, 70 Ala. 136, headnote 1.

[8, 9] The contract specifies no time within which the defendant must exercise his right to have the time extended for cutting the timber, and it specifies no time within which the 50 cents per acre must be paid or tendered for it, so under these circumstances the presumption is, the parties intended performance of these matters within a reasonable time after the specified period of five years' limit. What is a reasonable time depends in this case upon facts extrinsic to the contract, and which are in dispute from the testimony. In Cotton v. Cotton, 75 Ala. 346, this court wrote:

"The rule of law is that, when a contract does not specify a particular time, or appoint the happening of a particular event, for performance, the presumption is the parties intended performance within a reasonable time. What is a reasonable time is sometimes a question of fact, and sometimes a question of law. When it depends upon facts extrinsic to the contract, which are matters of dispute, it is a question of fact; when it depends upon the construction of a contract in writing, or when it depends upon undisputed extrinsic facts, it is matter of law."

What is a reasonable time "depends materially upon the nature of the duty to be performed, the relations of the parties, and the peculiar circumstances of the particular case." Cotton v. Cotton, supra. See, also, Erswell v. Ford, 205 Ala. 494, 88 So. 429; S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 281, 65 So. 187.

[10] It results that the court erred in its oral charge to the jury, and for this error the judgment will be reversed and the cause remanded. Coley v. English, 209 Ala. 688, 96 So. 909, headnote 2, and authorities therein cited.

Reversed and remanded.

SOMERVILLE, GARDNER, and BOULDIN, JJ., concur.

ANDERSON, C. J., and SAYRE and THOMAS, JJ. (dissenting), think that the renewal must have been made during the life of the original contract, and that the oral charge of the trial court was free from error.