## HARVEY *v.* LINDSAY.

1. REAL-ESTATE BROKERS — RELATIONS WITH PRINCIPAL — GOOD FAITH—EVIDENCE.

   Evidence that a prospective purchaser of land on which he held an option from the broker, pending the purchase, offered it to third parties at a price less than that which the owner was then asking, does not show conclusively that the option given was for less than the price asked, or that the broker disclosed his knowledge that the owner could be induced to take a smaller sum.

2. SAME—COMMISSIONS—DISPUTE AS TO AMOUNT.

   Plaintiff, the assignee of a real-estate broker, sought to recover, as commissions upon the sale of defendant's lands, a given per cent. of the purchase price, according to an alleged verbal agreement that the broker should receive such compensation. Defendant contended that the rate claimed was to be paid only in case the lands should realize a specified sum, which they did not, and, to support this contention, placed in evidence a telegram sent by him to plaintiff's assignor, so stating the terms. Plaintiff then introduced, under objection, a letter sent to defendant on receipt of the telegram, in which the broker's understanding of the agreement was stated in accordance with plaintiff's contention at the trial, to which letter no reply was made. *Held,* that the letter was admissible to aid the jury in determining what the contract really was.

Error to Wayne; Hosmer, J.  Submitted April 20, 1898.  Decided June 7, 1898.

*Assumpsit* by Joseph J. Harvey, as assignee of Henry Gamble, against Archibald G. Lindsay, Frederick Marvin, and De Forest Paine, for a commission on the sale of land. From a judgment for plaintiff, defendants bring error. Affirmed.

*Hoyt Post* (*Edwin F. Conely*, of counsel), for appellants.

*T. E. Tarsney* and *W. G. Fitzpatrick*, for appellee.

Grant, C. J.    The defendants were the owners of a large tract of pine land in Wisconsin, which they sold to one Don J. Leathers in March, 1892.    One Henry Gamble claimed to have a contract with the defendants for the sale of these lands for 2½ per cent. commission, and that he procured the purchaser.    He assigned his claim to the plaintiff.    Upon the merits of the controversy, plaintiff stands in the same position as though Mr. Gamble were the plaintiff.    Mr. Gamble had advanced $12,932 towards the purchase of this land, and by written agreement dated November 3, 1888, was to receive from the sale that amount, with interest, and one-third of all the net profits. No profits were made.    The first conversation in regard to a commission was had in May or June, 1891, between Mr. Gamble and Mr. Lindsay.    This conversation is unimportant, as Mr. Lindsay informed Mr. Gamble that the entire matter was in the hands of Mr. Paine.    Mr. Gamble thereupon went to Mr. Paine's office.    Mr. Gamble testified that Mr. Paine agreed to allow him a commission of 2½ per cent. on whatever amount was received, and promised to give him a memorandum in writing to that effect, but could not give it to him then on account of negotiations with another party, from whom he had not heard.    Mr. Paine testified that the contract was a commission of 2½ per cent. upon a sale for $210,000.    Mr. Gamble states the conversation as follows:

"I asked Mr. Paine what price he asked for the timber. 'Well,' he says, 'the asking price is $210,000, but, if you

find a purchaser, we will make the price all right;' but the asking price must be $210,000, because, if he offered it lower, they would try to beat him down; they would try to get it for less."

Mr. Paine testified that Mr. Gamble asked for an option, which he refused; that the price at which Gamble was authorized to make a sale was fixed at $210,000, with a commission of 2½ per cent.

The result, aside from the written evidence, depended entirely upon the testimony of three witnesses,—Gamble and Leathers for the plaintiff, and Mr. Paine for the defendants. As to their verbal conversations in regard to the contract, their testimony is in direct conflict, and, so far as the result depended upon them, the question was for the determination of the jury.

Certain written evidence is important. The first communication, after the above conversation, shown by the record, is a letter from Paine to Gamble, June 20, 1891, as follows:

"*Dear Sir:* I find I cannot give option just now; may be next week. If and when the men are ready to go in and estimate, let me know, and I will try and arrange for you."

To this Gamble replied as follows:

"*Dear Sir:* Your letter received. You say you are not able to give an option until parties are ready to go on. The men are here now, and ready to go on, if they can get a 30-day refusal. If you will send me a refusal immediately, we will go at once, and look the land. Of course, I gave them to understand that I could get the refusal any time they were ready to go and look the same. They are parties who intend looking with a view to lumbering same next winter. If anything is done in the matter, it must be done at once."

June 23d, Paine replied by telegraph as follows:

"Three applications for the pine. Name your parties. Price, $210,000. Will give 15 days, and extend then if trade on. If sold by you, 2½ per cent. commission to you."

June 24th, Gamble replied by letter:

"*Dear Sir:* The party waiting to examine Ashland timber went, the day I received your telegram, to Toledo, and will return Sunday. If he is still desirous of examining timber, I will wire you Monday. I will try to sell it to him at $210,000, with the understanding you are to pay 2½ per cent. commission on whatever price it is sold for. This party's land-looker is more liberal in estimating than any other man in the valley, and, if he should decide to examine the timber, the chances of a sale are good."

To this letter Paine made no reply. Gamble did not make the sale referred to in that letter, and did not disclose to defendants the name of the party. Nothing further appears to have been done until in September following, when negotiations were opened with Mr. Leathers by Gamble, resulting in a sale to him. Mr. Gamble and Mr. Leathers went to Detroit in October to see Mr. Paine. Meanwhile Mr. Leathers and the West Michigan Lumber Company each had put a man on the lands, and had them examined. Leathers at the same time gave the West Michigan Lumber Company a price of $200,000. In the interview at Detroit, Mr. Leathers offered Mr. Paine $173,000. Mr. Leathers put this offer in writing, Mr. Paine informing him that he could not accept that offer without authority from Mr. Lindsay, who was then away from home. Mr. Leathers went to Kentucky immediately. Mr. Paine communicated the offer to Lindsay, who authorized the sale, and acceptance was wired to Leathers. At that interview, Mr. Paine testified that he asked Mr. Gamble about his commission if they made a sale for less than $210,000, and that Gamble agreed to take $2,000. Gamble testified that his commission of $2,000 was conditional upon the sale being made for $173,000, but, if the sale was for more than that sum, then he was to receive 2½ per cent. on the total amount.

Subsequently, when the parties met to carry out the agreement and convey the lands, it became known for the first time to Mr. Paine that the West Michigan Lumber

Company was to pay Leathers $200,000 for the land. In this connection Gamble testified that he knew that the West Michigan Lumber Company was interested; that its estimator went upon the land with the one of Leathers; that he supposed Leathers was a part of the lumber company; and that he did not communicate to the defendants what knowledge he had in this matter. When Paine ascertained that the lands were to be sold for $200,000, he charged Leathers with misrepresentation at the time his offer was made. Negotiations were thereupon temporarily suspended. Defendants, however, were anxious to dispose of the land, upon the sale of which, in any event, they were to be losers, and tendered to Leathers the deed of Mr. Lindsay, as the surviving partner of Lindsay & Gamble, a partnership formerly owning the lands. The West Michigan Lumber Company was in doubt as to the validity of this title. It was thereupon agreed that Mr. Paine should perfect the title by securing deeds from the heirs of the deceased Mr. Gamble, and, failing in that, he should perfect the title by proceedings in chancery, and, in consideration of this, the price was increased to $185,000. Mr. Paine carried out this agreement, and the money was finally paid in March, 1892. Plaintiff recovered verdict and judgment for 2½ per cent. commission for the total amount of the sale.

1. The principal assignment of error is the refusal of the court to direct a verdict for the defendants, for the reason that Gamble was guilty of bad faith towards defendants in his dealings with Leathers. Upon this point the court instructed the jury as follows:

"If Mr. Gamble gave Mr. Leathers such information, or made to him such statements, as to cause Mr. Leathers to become satisfied that the defendants would not insist upon the price asked, and that he could press them into accepting a substantially less price for the pine, Mr. Gamble was guilty of bad faith towards the defendants, and his assignee, the plaintiff, Mr. Harvey, would not be entitled to recover any compensation for what he may have done in connection with the deal with Mr. Leathers."

We are not satisfied that bad faith was conclusively proven. Defendants' counsel base the above request principally upon the testimony of Leathers that Gamble gave him an option, and that about the same time Leathers gave the West Michigan Lumber Company the price of $200,000. This option was not produced, and there is no evidence of the price stated therein, except as it may be inferred from the contemporaneous offer of Leathers to the lumber company for $200,000. It does not conclusively follow that because Leathers named a less price to the lumber company, or it offered a less price, the option to Leathers was for less than the price named by Paine to Gamble. Leathers might have hoped to get it for less than the amount named. Without going fully into the testimony, which would be profitless, we think that the question was properly submitted to the jury. No fault was found with the charge as given if the question of bad faith was for the jury to determine.

2. Error is assigned upon the admission of the letter of June 24th from Gamble to Paine. It is urged that the telegram of June 23d from Paine to Gamble was the latter's sole chart to guide him in his negotiations; that the letter made no change in the terms of the telegram unless approved by Paine; that it never was approved; and that Paine's silence did not authorize Gamble to proceed under his letter. All this may be conceded, and yet the letter be admissible as throwing light upon the parol contract. All the conversations, letters, and telegrams were admissible to aid the jury in determining what the contract was.

3. Four errors are assigned upon the ruling of the court excluding certain questions put to Gamble upon cross-examination. The cross-examination was long and searching. We think the rulings of the court in rejecting the testimony were proper. They are not of interest or importance to the profession, and therefore we do not discuss them.

Judgment affirmed.

The other Justices concurred.