## WOLF v. CASAMENTO et al.*
### No. 17087.

Court of Appeal of Louisiana. Orleans.
Jan. 10, 1939.

Sidney G. Roos, of New Orleans, for appellant.

Gerald Netter, of New Orleans, for appellee.

McCALEB, Judge.

This is a suit by a real estate agent for the recovery of a commission on property sold by the defendant to one Dr. Rafael B. Riera. She alleges that, on July 6, 1936, the defendant, Anthony Casamento, employed her, under written contract, as his exclusive agent to find a purchaser for a certain single two-story residence owned by him, bearing municipal number 825 Broadway St. in the City of New Orleans and that, in accordance therewith, she, between August 15 and September 1, 1936, contacted Dr. Rafael B. Riera, who was a prospective purchaser of the property, and succeeded in having him lease it for one year. She further avers that, on November 6, 1936, due to her efforts in securing the interest of Dr. Riera in the real estate, the latter purchased it from the defendant for the sum of $6,500; that her contract of employment terminated on October 4, 1936, and that the defendant, acting in collusion with Dr. Riera, attempted to defeat her right to a commission on the sale by postponing the transfer of the property to a date subsequent to the expiration of her contract.

The defendant admits that he appointed the plaintiff as his exclusive agent for a period of 90 days from July 6, 1936, to sell his property for the sum of $8,000 (or any less amount that might be agreed upon) and that he sold the real estate to Dr. Riera on November 6, 1936. However, he resists liability in the case on the grounds (1) that her contract had expired at the time the sale was consummated; (2) that she did not procure Dr. Riera as a prospective purchaser of his property and (3) that, at all events, she is not entitled to a commission because she has been guilty of a breach of trust.

The case proceeded to trial on these issues and the district judge, after hearing the evidence, found for the plaintiff in the amount prayed for in the petition. Wherefore this appeal.

The record discloses that, on June 6, 1936, the defendant, by written contract, employed the plaintiff as his exclusive agent to .sell his property known as 825 Broadway St. "For the price and sum of $8000.00 (eight thousand) dollars, or any

*Rehearing denied Feb. 27, 1939.

less amount that might be agreed upon hereafter." ' In this authorization, he obligated himself to refer all applicants for the purchase of the property to the plaintiff and bound himself to pay her a commission of 4% of the sale price in the event the house was sold during a period of 90 days from the date of the contract, irrespective of whether she procured the purchaser or not. In addition to this, he also employed plaintiff as his exclusive rental agent of the premises under a similar contract.

During the latter part of August 1936, Dr. Riera called upon the plaintiff and made inquiries concerning the purchase or lease of the dwelling. As a result of the negotiations had with him, plaintiff succeeded in securing him as a tenant and he leased the premises from the defendant for a period of one year at a monthly rental of $55. Thereafter, on November 6, 1936, exactly one month after plaintiff's contract of employment had expired, he purchased the property from the defendant for the sum of $6,500.

Plaintiff testified that, when she first showed Dr. Riera defendant's house in August 1936, he was primarily interested in buying the property and made her an offer of $6,000; that she told him that this offer was insufficient in amount; that, if he would submit an offer of $6,500, she thought Casamento might be induced to accept that sum and that he replied that, before he made an offer in excess of $6,000, he would prefer to rent the property for awhile in order to determine whether he liked it. She further states that, while no definite agreement was made as a result of her first conference with Dr. Riera, she saw him on September 2, 1936, moving into the premises and that, being surprised that an agreement had evidently been made with the defendant without her knowledge, she immediately contacted the latter and was informed by him that he had rented the premises to Dr. Riera for a year at a monthly rental of $55. She also declared that, at the time she spoke to the defendant, he stated that he was not interested in renting the property; that he requested her to continue negotiations with Dr. Riera with a view of effecting a sale; that, from the period elapsing from September 2nd (when Dr. Riera moved into the house) until the expiration of her contract, she tried, without success, to prevail upon the doctor to buy the property and that, shortly after the expiration of her agency contract, she ascertained that he had purchased the property for $6,500. She proclaims that, while she was negotiating with Dr. Riera for the purchase of the real estate, she received an offer of $6,000 from another prospective purchaser; that she communicated this offer to the defendant and that the latter replied that he was not interested because he had made arrangements with the homestead, holding the mortgage on the house, to refinance his loan. Later, when she discovered that the defendant had sold the property, she asked him why he had not informed her about it and he replied, "I sold it, so why?"

Plaintiff's statement is partially corroborated by the testimony of her sister, Mrs. Sarah Markson, who was present on some of the occasions when negotiations were had with Dr. Riera. She also offered the records of the Sixth District Building & Loan Association, together with the testimony of its employees, in an effort to show that, prior to the expiration of her contract of employment, uninterrupted negotiations were being carried on by the defendant and Dr. Riera looking to the ultimate sale and purchase of the real estate. This evidence reveals that, between October 7 and 10, 1936, or a few days after plaintiff's agency contract had expired, Dr. Riera requested the homestead, as mortgagee of the property, to appraise its value and that on October 14, 1936, he applied for a $6,000 loan on it.

On the other hand, the defendant stated that he was not aware of the fact that Dr. Riera was interested in purchasing his property until about two months after the latter had taken possession of the house under the contract of lease; that he did not want to sell it for less than $8,000 and that he finally changed his mind and accepted the $6,500 offer because he was anxious to reduce an outstanding mortgage of $28,000 burdening all of the real estate owned by him. (It will be noted that, since Dr. Riera moved into the property on September 2nd, the defendant's testimony can only be construed to mean that it was approximately November 1st when Dr. Riera first offered to buy the house from him or about four or five days before the act of sale was passed.)

Dr. Riera, testifying on behalf of the defendant, declared that, at the time he first approached Miss Wolf, he had no intention of buying the property and was only interested in renting it; that he did

not want to pay over $50 per month rent and that, after further deliberation, he agreed to lease it for one year at $55 per month. He further asserts that no negotiations, concerning the purchase of the house, were ever had by him with the defendant until a few days before the act of sale was passed; that he was interested in buying a place in Algiers and that it was only when he ascertained that he could not effect a purchase of that house that he went to the homestead for the purpose of finding out how large a loan would be granted to him on defendant's property. He asserts that, when he learned that he could obtain a homestead loan of $6,000, he decided that it would be cheaper for him to buy defendant's property than to pay the rent under the lease and that it was then that he first contacted the defendant and offered to buy the place for $6,500.

Our brother below, in finding for the plaintiff, was evidently not favorably impressed with the testimony of either Dr. Riera or the defendant. . Neither are we. The chain of events, which led up to the ultimate purchase of the real estate, is such as to exclude any other reasonable hypothesis but that the defendant and Dr. Riera had been dealing together uninterruptedly from the date the latter took possession of the house under the lease contract. Their abject denials of secret negotiations are completely overcome by the circumstances surrounding their actions throughout the transaction. For instance, why should the doctor lease the house directly from the defendant when he knew that the plaintiff was defendant's duly appointed agent? And why did not the defendant notify the plaintiff that he had negotiated the lease with the doctor? These and many other questions are not answered by either the defendant or the doctor in their testimony. Moreovor, it would be a severe strain upon our credulity to ask us to believe that Dr. Riera applied to the Sixth District Building & Loan Association for a loan on the real estate without having some previous agreement with the defendant with respect to its price. And we also experience difficulty in believing that he and the defendant did not have any negotiations whatsoever with regard to the sale of the property until some four or five days before the transfer was actually made.

It is well settled that a real estate agent does not ordinarily earn his commission unless he procures a purchaser within the time fixed in his contract. See Mathews v. Cacioppo, La.App., 172 So. 584, and Wittenberg v. McGrath, 3 La. App. 244. But it has also been established that the owner is liable to the agent for a commission in cases where the latter has procured a prospect and the owner has continued negotiations uninterruptedly with such prospect which culminate in a sale of the property, even though the transfer is not made until after the termination of the agency contract. See Harvey v. Winters, 1 La.App. 383. In the case at bar, we have no hesitancy in holding that Dr. Riera was the plaintiff's prospect and that the defendant carried on secret dealings with him, which resulted in the sale of the house on November 6, 1936, for the purpose of defeating plaintiff's rights under the agency contract. It therefore follows that she is entitled to the recovery of the commission sued for.

Finally, the defendant contends that, at all events, the plaintiff should not be permitted to recover in this case because she has been guilty of a breach of trust. In support of this contention, he points to an allegation in plaintiff's petition in which she asserts that, when Dr. Riera first offered to purchase the property for $6,000, she advised him that the contract price was $8,000 but that she thought she could induce the defendant to accept $6,500 for it. It is said that, since the property was listed with plaintiff for $8,000, it was obviously her duty to obtain that price if possible and that when she informed Dr. Riera that she thought her client might be willing to take $6,500, she became unfaithful to her trust.

The point is not well taken. Plaintiff was employed to sell the property for $8,000 or "any less amount that may be agreed upon hereafter." The defendant was not injured by plaintiff's statement to Dr. Riera since he has specifically ratified her representation by subsequently selling the property for $6,500. It should be borne in mind that plaintiff had no right, under the agency contract, to effect a sale for less than the list price of $8,000 and that all offers had to be submitted to the defendant for his approval and consent. Her statement to Dr. Riera was no more than an attempt to bring the parties together and have them agree upon a price satisfactory to both.

Plaintiff has asked for 10% damages for frivolous appeal. We do not think this is a case which would justify such an award.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.