[Civ. No. 12235. First Dist., Div. One. Mar. 3, 1943.]

BRUCE E. BAIRD, Appellant, v. M. C. MADSEN, Respondent.

Bohnett, Hill, Cottrell & Boccardo and James F. Boccardo for Appellant.

Rosendale, Thomas & Muller for Respondent.

KNIGHT, J.—Plaintiff sued to recover $2,925 as real estate commissions and $750 attorney's fees alleged to be due under a sales agency agreement dated June 20, 1939. The cause went to trial on the third amended complaint, and was tried before the court sitting without a jury. Several days after the cause was submitted for decision plaintiff moved for leave to file a fourth amended complaint whereunder he based his claim to commissions on a later agreement, dated July 26, 1939, which covered a greater quantity of land and called for the payment of a larger commission. The ground of the motion was that there was a variance between the allegations of the third amended complaint and the proof, and that the allegations of the fourth amended complaint conformed to the proof. The motion was denied; and thereafter findings and judgment were entered in favor of the defendant; and from said judgment plaintiff appeals. The major points urged for reversal are that the judgment is contrary to law; that the controlling findings upon which it is based are unsupported by the evidence, and that the trial court abused its discretion in denying permission to file the fourth amended complaint.

The property covered by the agreement sued upon consisted of 260 acres of land situate about ten miles south of Salinas; and by the terms of the agreement plaintiff was authorized to sell the same for $225 an acre. The provisions relating to plaintiff's employment and the payment to him of commissions were as follows: "In consideration of your listing the property described on the reverse side of this contract, and to use your efforts to find a purchaser therefor, I hereby grant you for the period of 30 days from date hereof, the exclusive right to sell or exchange said property or any part thereof, at the price and terms stated hereon, or at such other price, terms or exchange to which I may agree. *During the life of this contract,* if you find a buyer who is ready, able and willing to buy said property or any part thereof at said price and terms, or any other price or terms to which I may agree in writing, or if I agree to an exchange of said property or any part thereof is sold or exchanged

during said term by myself or any other person, firm, or corporation, I agree to pay you the California Real Estate Board commission on such sale or exchange, *or if it is sold or exchanged within three months after such expiration to any person to whom you or any member of your firm have previously offered it,* I agree to pay you the commission above stated and in case of the employment of an attorney to enforce any of the terms of this agreement, I agree to pay a reasonable attorney's fee and all cost of collection.'' (Italics ours.)

Soon after the property was listed with plaintiff he showed it to Ralph E. Myers and his father. It formed part of a 360 acre ranch, which was divided by an irrigation ditch. The portion covered by the agreement was on one side of the ditch, and consisted of upland. The remaining 100-acre portion was on the other side of the ditch, and was bottom land. It bordered on Highway 101, and according to some of the testimony was worth approximately $400 an acre more than the upland. After looking over the property the Myers stated they were not interested in buying the 260 acres, but would be interested in purchasing the entire ranch. Thereafter and on July 25, 1939, which it will be noted was after plaintiff's 30 day exclusive agency had expired, plaintiff obtained a written offer from Ralph E. Myers to purchase the entire 360 acres for $65,000, and Myers gave plaintiff a check for $500 as a deposit on that offer. Defendant rejected the offer, and on the next day, July 26, 1939, plaintiff secured from defendant another written agreement whereby defendant agreed to sell the entire 360 acres for $80,000, and to pay a commission of $4,000; but Myers refused to accept this offer. That same day, July 26, 1939, plaintiff obtained from defendant a third written agreement, whereby defendant agreed to sell the entire property to Myers for $72,500 and to pay a commission of $3,625. This third agreement was in the form of a ''Deposit Receipt.'' It was so denominated, and signed by plaintiff. After acknowledging receipt from Ralph E. Myers of the $500 he had theretofore paid to plaintiff on Myers' original $65,000 offer, there was set forth a description of the property, the amount of the purchase price and other conditions of the proposed sale, and it was signed by plaintiff. Following plaintiff's signature the document read: ''I agree to purchase the above described property on the terms and conditions herein stated''; and a line was left

blank for the purchaser's signature. Then followed the agreement of the owner to sell under the terms and conditions therein specified, and to pay the commission, and this was signed by defendant. Plaintiff immediately delivered this third agreement to Ralph E. Myers, but Myers did not sign the same because his father was then in Alaska and he said they wanted to make some soil tests of the property. In this connection Myers testified that at the time of the delivery of the agreement to him it was agreed that the $500 deposit paid by him on the previous offer of $65,000 should be retained by plaintiff as a deposit on the new offer of $72,500, and that he understood the making of such deposit gave them a 30-day option within which the soil tests could be made; that such was the custom.

Meanwhile plaintiff found another prospective buyer, named E. E. Harden, and within a day or two after the delivery of the third agreement to Myers, plaintiff again called on Myers and asked whether they wanted the ranch. Myers replied that they did, but that they had not yet received reports on the soil tests, and that he could not give a definite answer until such tests had been made. Plaintiff then asked Myers for the return of the third agreement, saying he wanted it for his files, and Myers gave it to him. As stated, this agreement had been signed by both plaintiff and defendant, and acknowledged the receipt of the $500 deposit on the purchase price. Shortly after plaintiff obtained possession of the agreement, and on July 31, 1939, a salesman from plaintiff's office called on Myers and tried to induce Myers to take back the $500 deposit, which Myers refused to accept; and on that same day, July 31, 1939, plaintiff went to defendant, and without informing him that he had obtained possession of the third agreement, or that he had attempted to return the $500 deposit and Myers had refused to accept it, he laid before defendant a fourth agreement which he asked him to sign. It was identical in form with the third agreement except that the name of the purchaser and the amount of the deposit were left blank. Defendant testified that when plaintiff presented the fourth agreement to him to sign he told plaintiff he would sign it "providing Myers was not going to be the buyer," that he would be willing to sell to someone else if he got his price, "but only if Myers were to give up his intention to buy." Immediately after obtaining defendant's signature to the fourth agreement and

on that same day, July 31, 1939, plaintiff closed the sale of the entire ranch with Harden, by securing Harden's signature, as purchaser, to the fourth agreement, and accepting from him a deposit of $1,000 on the purchase price. To this end plaintiff inserted Harden's name as purchaser, and the amount of the deposit he had paid, in the blank places in the fourth agreement. Three days later, and on August 3, 1939, plaintiff telegraphed defendant, who was in Oakland, that his property had been sold to Harden; and on the same day he wrote Myers to that effect and sent him enclosed the $500 deposit. In that letter he stated: ''I regret to report that Mr. Madsen would not accept your offer, and that subsequently I obtained from E. E. Harden an offer of $72,500.00, which was accepted by Mr. Madsen.'' Upon the receipt of the telegram from plaintiff, defendant returned to Salinas, and dealing directly with Myers consummated a sale with him of the entire 360 acres for $72,500. Plaintiff afterwards demanded a commission of $2,925, which he claimed was due him under the original, June 20, 1939, sales agency agreement, that is, 5 per cent of the selling price of 260 acres at $225 an acre. Defendant refused to pay the same, and thereupon plaintiff brought this action.

There was some conflict in the evidence. For example plaintiff's testimony regarding the conversation had with Myers when he took back the third agreement, varied with that given by Myers; and he also gave a different version as to what took place between him and defendant when he secured defendant's signature to the fourth agreement. But under well settled rules governing appeals, all such conflicts must be resolved against an appellant.

We are of the opinion that the trial court's refusal to grant leave to file the proposed fourth amended complaint did not constitute an abuse of discretion. While it is true that great liberality should be allowed in granting permission to amend to conform to the proof, it is well settled that a plaintiff may not amend so as to change the cause of action or to set up a new and distinct cause of action not contained in the original complaint (21 Cal.Jur. 209); and obviously such would have been the effect of the filing of the proposed fourth amended complaint herein.

As already pointed out, the cause of action set forth in the third amended complaint, and upon which the cause was tried, was for the alleged breach of the sales agency agree-

ment executed on June 20, 1939. No reference whatever was made therein, directly or indirectly, to any other agreement. The tract of land authorized to be sold thereunder was definitely described as containing 260 acres, and the selling price was fixed at $225 an acre, or a total price of $58,500. Accordingly the amount of commissions plaintiff was entitled to receive for the services to be performed under said sales agency agreement, and for which he sued, was $2,925; whereas the cause of action set forth in the proposed fourth amended complaint was based on the alleged breach of an entirely different form of agreement, executed on July 26, 1939, the subject matter of which was the sale of 360 acres of land for the gross sum of $72,500; and the amount of commissions to be paid thereunder was $3,625. It is apparent, therefore, that the proposed fourth amended complaint not only set up a new and distinct cause of action, not included in the third amended complaint, but that had plaintiff been granted leave to file the same, it would have necessitated the reopening of the case so as to permit defendant to answer the allegations of the fourth amended complaint, and then required a trial of the new issues raised thereby. In other words, the defendant, answering the third amended complaint, denied that plaintiff was entitled to any commissions under the contract therein sued upon, and several special defenses were interposed against the enforcement of that contract; but it cannot be said as a matter of law that defendant would have relied on these same defenses as against the enforcement of the later agreement upon which plaintiff based his proposed fourth amended complaint. The original and the first and second amended complaints are not embodied in the record on this appeal, and in the absence of anything appearing to the contrary it may be assumed that they also, like the third amended complaint, were based exclusively on the sales agency agreement of June 20, 1939. Since, therefore, in all four of the complaints filed by plaintiff he chose to base his claim to commissions exclusively on the sales agency agreement of June 20, 1939, it cannot reasonably be held that the denial of plaintiff's motion, presented several days after the cause had been under submission, for leave to file a fourth amended complaint, setting up a cause of action based on a different agreement, constituted an abuse of discretion.

■ The appeal narrows down, therefore, to the issue of whether plaintiff was entitled to recover the commissions provided for by the terms of the June 20, 1939, sales agency contract, upon which the third amended complaint was based; and it is our opinion that the negative conclusion reached by the trial court on that issue is not contrary to law or to the evidence.

The general rule governing in cases of this kind is that a real estate broker may recover his commissions under his contract of employment when he procures a buyer who is ready, willing and financially able to purchase the particular property described in the agency contract pursuant to the terms and conditions specified therein. Therefore, in the present case plaintiff was entitled to the commissions provided for in his June 20, 1939, sales agency contract of employment only if and when he found a buyer ready, willing and able to purchase the 260 acres of land described therein, at $225 an acre; and the cause of action set forth in his third amended complaint is based upon the claim that he performed that contract. In this regard he alleged that "shortly after the execution of said agreement . . . and within thirty days from the date thereof, plaintiff did, in fact, find and obtain a buyer who was ready, willing and able to buy the said property from defendant for the price authorized by said defendant, to wit: one Ralph E. Myers; that plaintiff offered said property to said Ralph E. Myers within thirty days from the date of said agreement . . . and the said Ralph E. Myers did thereafter, and on or about the 8th day of August, 1939, purchase the said property from said M. C. Madsen . . . for and in consideration of the sum of $225.00 per acre." The evidence shows, however, without conflict, that Myers, the prospective buyer, was never ready or willing to purchase said 260 acres under the terms and conditions specified in plaintiff's contract of employment. To the contrary, it is conceded by all parties that after Myers inspected the property he stated definitely that he was "not interested." Nor was any portion of the 260 acres thereafter sold to Myers at $225 an acre. Obviously, therefore, plaintiff failed to prove he had performed the contract of employment upon which his cause of action was based.

■ Plaintiff contends, however, that since following the refusal of Myers to purchase said property under the terms specified in the June 20, 1939, contract of employment, nego-

tiations were opened and carried on between plaintiff and Myers, with the consent of the defendant, for the purchase of the entire ranch, which eventually resulted in the execution of the July 26, 1939, ''deposit receipt'' agreement and the sale on August 8, 1939, of the entire 360 acres to Myers for $72,500, there was an extension of the terms of the June 20, 1939, sales agency contract which brought the case within the provisions thereof that if said property was sold or exchanged within three months after the expiration of that contract to any person to whom plaintiff had previously offered it, plaintiff was entitled to the commission provided for in said contract. Plaintiff argues, therefore, that even though he was not entitled to receive the full commission of $3,625 under the $72,500 July 26, 1939, agreement, he was entitled to the commission of $2,625 provided for by the June 20, 1939, sales agency contract.

The theory thus advanced is not sustainable for several reasons. In the first place, in order to invoke the doctrines of extension or modification of contracts, the essential facts relied upon to bring the situation within the operation of those doctrines must be pleaded; and here no such facts were pleaded. The theories of extension or modification are not even suggested. On the contrary, the cause of action sued upon is based entirely upon the June 20, 1939, sales agency contract as executed. The rule in this regard is that a plaintiff must plead the particular contract which he claims he has performed; he cannot recover on proof of another contract, or of a contract substituted for, or constituting a modification of the contract declared on. (9 C.J., p. 639, 640; 12 C.J.S., p. 254, 255; *Daley* v. *Russ,* 86 Cal. 114 [24 P. 867]; *Leuschner* v. *Patrick,* (Tex.Civ.App.) 103 S.W. 664; *Whitelock* v. *Beach,* 174 Mo. 428 [160 S.W. 815].) As shown, plaintiff herein did not prove performance of the contract pleaded. The sale of the 260 acres was not made within 30 days; nor was any portion of the 260 acres sold thereafter at the price demanded in the contract, to wit, $225 an acre. Therefore, if plaintiff sought recovery under the contract of July 26, 1939, as an extension of the June 20, 1939, contract, he should have based his complaint on that contract or pleaded it as an extension of the June contract, instead of pleading full performance of the June contract. As said in *Daley* v. *Russ, supra,* ''The evidence, therefore, did not show performance

of the contract set forth in the complaint. And if the conduct of the defendants amounted to a modification of the contract, it should have been declared on as modified.'' The cases cited by plaintiff in support of his contention do hold that due to the conduct of the parties there involved there was a waiver of the time limit; but no question of pleading was raised in any of them, and therefore they are not determinative of the point presented here.

Plaintiff contends that the absence of allegations in the complaint of facts showing an extension is unimportant for the reason that the circumstances attending the execution of the July 26, 1939, agreement were set forth in one of the special defenses pleaded in defendant's answer. There is no merit in the contention. The rule contended for by plaintiff does not apply where as here the facts alleged in the answer are such as negative the right to maintain the action set forth in the complaint. (21 Cal.Jur., p. 279.)

Secondly and in any event, plaintiff's contention that he was entitled to recover commissions under the theory that the terms of the June 20, 1939, contract were extended, cannot ·be sustained for the reason that the trial court's adverse decision is based largely on two material findings which are legally supported. One is to the effect that plaintiff ''by his own act [did] dismiss said Ralph E. Myers as a prospective purchaser of said property and did acquit said Ralph E. Myers from any connection with the purchase of said property and did abandon said Ralph E. Myers as a purchaser of said property.'' This finding is based upon the evidence showing that within a day or two after having delivered the July 26, 1939, deposit receipt agreement to Myers he obtained the surrender thereof from Myers, returned Myers' $500 deposit, and after securing the fourth sales agreement from defendant on July 31, 1939, plaintiff sold the ranch to Harden and accepted from him a deposit of $1,000. The governing rule in such cases is stated in 8 American Jurisprudence, p. 1069, as follows: ''If a broker, after introducing a prospective customer to his employer to no purpose, abandons his employment entirely, or if, after procuring a person who proves to be unwilling to accept the terms of his principal, he merely ceases to make further endeavors to negotiate a deal with that particular individual and all negotiations in that direction are completely broken off and terminated, he will not be entitled to a commission if his employer subse-

quently renews negotiations with the same person, either directly or through the medium of another agent, and thus effects a sale without further effort on the part of the broker first employed.'' In view of the facts above stated, the foregoing rule is doubtless here controlling.

The other determinative finding is based on the second affirmative defense set up in the answer, the allegations of which are to the following effect: that ''plaintiff did not faithfully discharge his duties as a real estate broker'' under the June 20, 1939, sales agency contract ''in that he acted adversely to defendant's interest in the following respects,'' that defendant signed the July 26, 1939, agreement to sell the property to Myers for $72,500 and that plaintiff accepted from Myers a deposit of $500 on the purchase price, acknowledged the receipt thereof in writing and delivered the agreement and receipt to Myers; that defendant was desirous of selling the property to Myers, all of which plaintiff ''then and there and at all times thereafter well and truly knew''; that thereafter and on or about August 2, 1939, plaintiff, ''without defendant's knowledge or consent and by trick and subterfuge practiced upon'' Myers secured said agreement and receipt from Myers and on August 3, 1939, returned said deposit to Myers without the knowledge or consent of defendant and without the consent of Myers, ''and did then and thereby discharge and abandon'' Myers as a purchaser of said property; that prior to August 3, 1939, defendant did not know of anything concerning any sale of the property to Harden, and that plaintiff did not prior to August 3, 1939, notify or advise defendant concerning Harden or any sale to him or any dealings with him; ''that plaintiff was in the foregoing respects and matters secretive, unfaithful and deceptive, and did act contrary to defendant's best interests, wishes and welfare. . . .'' The trial court found the foregoing allegations to be true, but further found that it was not true as alleged by defendant ''that plaintiff committed the acts therein alleged for the secret purpose of aiding another, to-wit, E. E. Harden, and advancing plaintiff's own welfare and interest at the expense of defendant.''

It is doubtless true, as pointed out by defendant, that a real estate broker must act in good faith in the discharge of his duties as agent; that by misconduct, breach of conduct or wilful disregard, in a material respect, of an obligation imposed upon him by the law of agency he may forfeit

his right to compensation. (*Mitchell* v. *Gould,* 90 Cal.App. 647 [266 P. 565] ; 12 C.J.S. 158; 8 Am.Jur. 1067.) To this end it is held that the rule which applies to trustees generally governs the relationship between a real estate broker and his principal. The broker is bound to disclose to the principal any facts known to him which are material to the transaction, and if he takes part in the negotiations he is bound to exercise his skill for the benefit of his principal; and any concealment from the principal of material facts known to the agent, or any collusion by the latter with a purchaser may operate to forfeit the right of the agent to compensation for his services (12 C.J.S. 158; 8 Am.Jur. 1067; *Mitchell* v. *Gould, supra; Carter* v. *Owens,* 58 Fla. 204 [50 So. 641; 25 L.R.A. N.S. 736] ; *Young* v. *Hughes,* 32 N.J.Eq. 372), and it matters not that there was no fraud meditated and no injury done. The rule is not intended to be remedial of actual wrong, but preventative of the possibility of it. (*Young* v. *Hughes, supra.*) Applying the foregoing legal principles to the findings on this issue, it would seem that the trial court was not unwarranted in giving judgment for the defendant.

Plaintiff assails the entire finding upon the ground that material portions thereof are wanting in evidentiary support, and in this respect it may be conceded that such findings are based on conflicting evidence. However, there is evidence supporting them, and that being so, the finding is here controlling.

In view of the conclusion reached in determining the matters already discussed, it becomes unnecessary to inquire into the remaining points urged for reversal, including those relating to the sufficiency of the evidence to support other findings.

Inferentially it appears from the record herein that other litigation has grown out of the sale of this ranch, and it should be understood that nothing that has been said here is intended to have any bearing thereon.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.