219 P.2d 339

HAYMES v. ROGERS.

No. 5189.

Supreme Court of Arizona.
June 12, 1950.

Marshall W. Haislip, of Phoenix, attorney for appellant.

Robert & Price, of Phoenix, attorneys for appellee.

DE CONCINI, Justice.

Kelley Rogers, hereinafter called appellee, brought an action against L. F. Haymes, hereinafter referred to as appellant, seeking to recover a real estate commission in the sum of $425. The case was tried before a jury which returned a verdict in favor of appellee. The said appellant owned a piece of realty which he had listed for sale with the appellee, real estate broker, for the sum of $9,500. The listing card which appellant signed provided that the commission to be paid appellee for selling the property was to be five (5%) per cent of the total selling price. Tom Kolouch was employed by the said appellee as a real estate salesman, and is hereafter referred to as "salesman".

On February 4, 1948, the said salesman contacted Mr. and Mrs. Louis Pour, prospective clients. He showed them various parcels of real estate, made an appointment with them for the following day in order to show them appellant's property. The salesman then drew a diagram of the said property in order to enable the Pours to locate and identify it the next day for their appointment. The Pours, however, proceeded to go to appellant's property

that very day and encountering the appellant, negotiated directly with him and purchased the property for the price of $8,500. The transcript of evidence (testimony) reveals that the appellant knew the Pours had been sent to him through the efforts of appellee's salesman but he did not know it until they verbally agreed on a sale and appellant had accepted a $50 deposit. Upon learning that fact he told the Pours that he would take care of the salesman.

Appellant makes several assignments of error and propositions of law. However we need only to consider whether the trial court was in error by refusing to grant a motion for an instructed verdict in favor of the defendant.

One of the propositions of law relied upon by the appellant is as follows: "The law requires that a real estate broker employed to sell land must act in entire good faith and in the interest of his employer, and if he induces the prospective buyer to believe that the property can be bought for less, he thereby fails to discharge that duty and forfeits all his rights to claim commission and compensation for his work."

There is no doubt that the above proposition of law is correct. A real estate agent owes the duty of utmost good faith and loyalty to his principal. The immediate problem here is whether the above proposition is applicable to the facts in this instance. The question is, is it a breach of a fiduciary duty and a betrayal of loyalty for a real estate broker to inform a prospective purchaser that a piece of realty may be purchased for less than the list price? We believe that such conduct is a breach of faith and contrary to the interests of his principal, and, therefore, is a violation of the fiduciary relationship existing between agent and principal which will preclude the agent from recovering a commission therefrom.

The facts here are clear and undisputed. The salesman informed the purchasers that he had an offer of $8,250 for the property from another purchaser which he was about to submit to appellant. He further told them he thought appellant would not take $8,250 but would probably sell for a price between $8,250 and $9,500 and that they in all probability could get it for $8,500. The agent was entirely without justification in informing the purchasers that the property might be bought for $8,500, since that placed the purchasers at a distinct advantage in bargaining with the principal as to the purchase price of the realty. As a general rule an agent knows through his contacts with his principal, how anxious he is to sell and whether or not the principal will accept less than the listed price. To inform a third person of that fact is a clear breach of duty and loyalty owed by the fiduciary to his principal. Such misconduct and breach of duty results in the agent's losing his right to compensation for services to which he

would otherwise be entitled. 2 Am.Jur. 235, Agency, section 299; Restatement of Agency, section 469.

The case of Mitchell v. Gould, 90 Cal. App. 647, 266 P. 565, 566, is very helpful. The California court in that case subscribed to the proposition of law, hereinabove set out, in the following words:

"It was the duty of Mitchell, as broker, to act in good faith and put forth his best efforts to further his principal's interests. If he failed in this regard, he forfeited his right to a commission. His instructions were to find a tenant for a short period, from five to seven years, and, in fact, he did find one for ten years. The principal urged him to secure a short lease, but, according to the evidence stricken out, he informed the prospective tenant that a fifteen years' lease could be obtained, whereupon the tenant refused to enter into a ten years' lease. This testimony stood uncontradicted at the close of defendant's evidence, and, if true, established bad faith on the part of the broker. There is a very good reason for the rule requiring the exercise of good faith on the part of a broker in transactions of this kind. The principal engages a broker to secure a tenant on the best terms obtainable, in this case for a short period. He depends upon the efforts of the broker to secure a tenant. The opportunity might readily be presented to the broker to act in the interests of the tenant and against those of his principal. * * *

"In Harvey v. Lindsay, 117 Mich. 267, 75 N.W. 627, the plaintiff was suing for a commission alleged to have been earned as a real estate broker. The following instruction of the trial court was approved:

" 'If Mr. Gamble gave Mr. Leathers such information or made to him such statements as to cause Mr. Leathers to become satisfied that the defendants would not insist upon the price asked, and that he could press them into accepting a substantially less price for the pine, Mr. Gamble was guilty of bad faith towards the defendants and his assignee, and the plaintiff, Mr. Harvey, would not be entitled to recover any compensation for what he may have done in connection with the deal with Mr. Leathers.' "

* * * * * *

"In Alford v. Creagh, 7 Ala.App. 358, 62 So. 254, the court lays down these rules:

" 'The law requires that a real estate agent, employed to sell land, must act in entire good faith and in the interest of his employer. Henderson v. Vincent, 84 Ala. 99, 101, 4 So. 180. To this end he must exact from the purchaser the price, the terms, and conditions of sale which his employer has fixed. 23 Am. & Eng. Ency.Law (2d Ed.) p. 902. If he fails to do this, but induces the prospective purchaser to believe that the property can be

bought for less, he fails to discharge that duty to his principal that good faith demands. Such conduct on the broker's part is well calculated to lead the purchaser to stand out and thereby either force from the seller a lower price than that fixed or delay the sale, even if he finally buys at the price fixed, both detrimental to the interest of the seller. * * * The real estate agent loses his right to commissions where, in his dealings in reference to the subject-matter of his employment, he is guilty of either fraud or bad faith towards his employer. 23 Am. & Eng.Ency.Law (2d Ed.) p. 921.' "

This determination makes a consideration of the other grounds for appeal unnecessary. Under the circumstances the court should have directed a verdict for the defendant, appellant.

Judgment reversed.

LA PRADE, C. J., and STANFORD and PHELPS, JJ., concur.

UDALL, Justice (dissenting).

I dissent for the reason that as I construe the record in the instant case the facts do not disclose such bad faith or gross misconduct on the part of the broker as to disentitle him to compensation.

There is no disagreement between us as to the high standard which the law prescribes must be maintained in dealings between an agent and his principal. The majority opinion cites the following text statements: 2 Am.Jur., Agency, Sec. 299; Restatement of the Law of Agency, Sec. 469, to which I might add 8 Am.Jur., Brokers, Sec. 142 and 12 C.J.S., Brokers, § 69. See also Baird v. Madsen, 57 Cal. App.2d 465, 134 P.2d 885, 891. The difficulty comes in applying the law to the facts of this case.

The great majority of the reported cases denying a brokerage fee involve instances where (1) the agent acts adversely for the purpose of securing a secret profit for himself or otherwise advancing his own welfare at the expense of that of his employer; (2) an agent disclosing the necessitous circumstances of his principal; (3) the agent is guilty of fraud or dishonesty in the transaction of his agency; (4) his conduct is disobedient or constitutes a wilful and deliberate breach of his contract of service; or (5) where he withholds information from his principal which it is his duty to disclose. The California case of Mitchell v. Gould, supra, relied upon by the majority for the reversal falls under this last classification. The broker whose instructions were to procure a short term lease, had obtained a ten-year lease which information he withheld from his principal at the same time informing the prospective tenant that a long term (15-year) lease could be obtained, and such a lease was later entered into. Certainly under such circumstances the bad faith of the broker was such that he had forfeited

his right to compensation. I submit, however, that the facts before us do not place the conduct of this broker within any of the prohibitions above enumerated and I have been unable to find a single case where the courts have denied compensation under a factual situation comparable to that presented by this record.

Two of the other cases referred to in Mitchell v. Gould, supra, are also readily distinguishable. In Alford v. Creagh, 7 Ala. App. 358, 62 So. 254, there was underhanded dealing on the part of the broker by his endeavoring to buy the property for his own benefit. In the case of Harvey v. Lindsay, 117 Mich. 267, 75 N. W. 627, 629, the decision turned upon the refusal of the trial court to direct a verdict for the defendants, the appellate court concluded "We are not satisfied that bad faith was conclusively proven." The judgment allowing the broker's fee was therefore affirmed.

An analysis of the testimony before us, when taken as it must be in the light most favorable to a sustaining of the judgment, shows but four questionable matters. First, the agent advised his principal, before the Pours came onto the scene, that in his opinion the listed sales price of $9500 was excessive. This statement was made after repeated efforts to sell to others at the list price had failed. I can see nothing improper in this. Second, the agent advised Pour (the ultimate purchaser whom he had procured) that his principal, the owner, then had on his desk for acceptance or rejection an offer of $8,250 which offer, in his opinion, the seller would not accept. There may have been some impropriety in this disclosure of his principal's business but I cannot read into this slip such gross misconduct as to warrant denying him compensation. Third, complaint is made that the broker failed to exert his best efforts to effect a sale to the Pours at the list price of $9500. In my opinion there is no merit to this contention because it is clear that the broker did advise the prospective purchasers that the owner's asking price was $9500 and it further appears that appellant perfected the sale with the Pours the evening of the first day they were contacted and before the broker's salesman had an opportunity to keep an appointment for the following day at 1:00 p. m., when he was to show them the property in question. It is unthinkable to believe that any purchaser would buy property without first seeing it. The majority evidently do not base the reversal upon any of these derelictions so finally we consider what is urged as the broker's most serious breach of duty to act in good faith and for the interest of the appellant, to wit, his unauthorized statement that the owner might accept less than the list price. To keep the record straight I quote from the cross-examination of salesman Tom Kolouch:

"Q. And you also told them at that time that you were pretty sure if they

would offer $8500 for the property that they would get it? A. I told them they might try $8500. I didn't tell them for sure they would get it because I wasn't setting a price on the other man's property. Q. And you, told them if they would offer $8500 that they might get the property? A. They might have, yes. Q. And there wasn't anything said at that time about their offering $9500 for the property? A. I told them the price was $9500 on our list." and the following is Mr. Pour's version of the matter: "Q. He told you to go out there and offer $8500 for the property? A. No, he told me it was listed for more, but he didn't think this offer would go through, and if I met somewhere in between I might get it."

In a somewhat parallel situation the Court of Appeals of Louisiana had this to say:

"Finally, the defendant contends that, at all events, the plaintiff should not be permitted to recover in this case because she has been guilty of a breach of trust. In support of this contention, he points to an allegation in plaintiff's petition in which she asserts that, when Dr. Riera first offered to purchase the property for $6,000, she advised him that the contract price was $8,000 but that she thought she could induce the defendant to accept $6,500 for it. It is said that, since the property was listed with plaintiff for $8,000, it was obviously her duty to obtain that price if possible and that when she informed Dr. Riera that she thought her client might be willing to take $6,500, she became unfaithful to her trust.

"The point is not well taken. Plaintiff was employed to sell the property for $8,000 or 'any less amount that may be agreed upon hereafter.' The defendant was not injured by plaintiff's statement to Dr. Riera since he has specifically ratified her representation by subsequently selling the property for $6,500. It should be borne in mind that plaintiff had no right, under the agency contract, to effect a sale for less than the list price of $8,000 and that all offers had to be submitted to the defendant for his approval and consent. *Her statement to Dr. Riera was no more than an attempt to bring the parties together and have them agree upon a price satisfactory to both.*" (Emphasis supplied.) Wolf v. Casamento, La.App., 185 So. 537, 539.

In effect, as I view it, all the appellee intended by his statements to the Pours was to hold their interest in the property until he could show it to them and the parties could be brought together. I understand it to be the law that the ultimate duty of the broker toward his principal is to procure a purchaser ready, willing and able to purchase upon terms agreed upon by the owner and the purchaser. How then can it be said that the effort of the broker in the instant case in attempting to interest a purchaser and

bring the purchaser and owner together by stating that the property might possibly be purchased for less than the quoted price (something which every prospective purchaser would be justified in assuming and which is a hope in the mind of every buyer) amounted to a breach of his duty to act for his principal's best interest? Will not the court's opinion be construed as holding that if a broker states to a purchaser or even indicates in any manner that property might be acquired for less than the listed price his right to a commission is thereby forfeited? If such be the declared law of this state it will certainly give a wide avenue of escape to unscrupulous realty owners from paying what is justly owed to agents who have been the immediate and efficient cause of the sale of their property.

It would be a most naive purchaser who would not know or assume without being told that the owner of realty might sell for less than the original asking price. In my opinion this broker's conduct does not disclose such bad faith or gross misconduct on his part as to warrant a forfeiture of all right to a commission. Particularly is this true where, as here, it is shown that the owner primarily refused to pay the usual 5% commission and thus brought on the lawsuit, because the broker would not agree to split the fee with him. Certainly the appellee was the procuring cause of the sale to the Pours as he put them in touch with the owners. The case was fairly tried to a jury and by their verdict it is apparent they found no evidence of bad faith or gross misconduct on the part of appellee. To me it seems erroneous for this court to now declare that the conduct heretofore enumerated, as a matter of law is such as to warrant denying all compensation to the broker.

I would affirm the judgment as entered by the learned trial court.